Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 16-14459-led |
| | |
| Sunpower by Renewable Energy Electric, Inc., | Chapter 11 |
| | |
| | Interim Hearing Date: OST Pending |
| Debtor. | Interim Hearing Time: OST Pending |

**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108 AND RULES 4001(b), 6003 AND 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF INTERIM AND FINAL ORDERS (A)(I) AUTHORIZING THE USE OF CASH, INCLUDING CASH COLLATERAL, (II) FINDING THAT THE INTERESTS OF THE PREPETITION LENDER AND ANY OTHER PURPORTEDLY SECURED PARTY ARE ADEQUATELY PROTECTED, AND (III) GRANTING RELATED RELIEF, OR (B) ALTERNATIVELY, AUTHORIZING THE DEBTOR TO SURCHARGE THE PREPETITION COLLATERAL, AND (C) SCHEDULING INTERIM AND FINAL HEARINGS**

Sunpower by Renewable Energy Electric, Inc., the debtor and debtor in possession in the above captioned matter (the "**Debtor**") files this emergency motion (the "**Motion**") pursuant to sections 105, 361, 362, 363, 364, 1107 and 1108 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of interim and final orders (a)(i) authorizing the Debtor's use of cash, which may comprise cash collateral, (ii) finding that the interests of any purportedly secured party are adequately protected, and (iii) granting related relief or (b) alternatively, authorizing the Debtor to surcharge the

1

prepetition collateral, and (c) scheduling interim and final hearings.  In support of the Motion, the Debtor relies upon and refers this Court to the Declaration of Jason M. Vita, the President of the Debtor (the "**Vita Declaration**"), filed contemporaneously with this Motion, and respectfully represents as follows:

### Jurisdiction

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3.     On August 12, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "**Bankruptcy Code**").

4.     The Debtor is a solar energy company and provides solar energy services, including the assessment and installation of solar panels to residential and commercial customers in Nevada, Arizona and California.

5.     On December 11, 2015, the Debtor entered into a business loan agreement with Strategic Funding Source, Inc. ("**Strategic**"), whereby Strategic agreed to loan the Debtor $750,000.00 in exchange for a security interest in the Debtor's assets.

6.     On or about March 31, 2016, the Debtor entered into a business loan agreement with SBF Financing and Technology, LLC ("**SBF**"), whereby SBF agreed to loan the Debtor $70,000.00 in exchange for a security interest in the Debtor's assets.

7.     On or about July 12, 2016, the Debtor entered into a business loan agreement with Pearl Capital ("**Pearl**" and collectively with Strategic and SBF, the "**Merchants**"),

whereby Pearl agreed to loan the Debtor $161,865.00 in exchange for a security interest in the Debtor's assets.

8.    As of the Petition Date, the Debtor owed Strategic approximately $750,000, SBF approximately $69,000 and Pearl approximately $160,000.

9.    As stated in the Vita Declaration, the Debtor depends on the revenues from the solar business, in part, to maintain its business operations, payroll and all other necessary expenses for the business.  The Debtor anticipates that over the next six months, the revenues generated will be sufficient to maintain and fund the expenses of the business.  The Debtor will be unable to maintain its solar business and the income stream generated therefrom, however, if it is denied the ability to use the revenues.  Moreover, without the ability to use the Cash Collateral, including the revenues, the Debtor will be forced to abandon its solar business to the detriment of the Debtor's estate, its creditors and other parties in interest.

### Relief Requested

10.    The Debtor seeks entry of interim and final orders (a)(i) authorizing the Debtor's use of cash, whether or not such constitutes Cash Collateral, (ii) finding that the interests of the Merchants and any other purportedly secured party are adequately protected, and (iii) granting related relief or (b) alternatively, authorizing the Debtor to surcharge the prepetition collateral, and (c) scheduling interim and final hearings.  Specifically, the Debtor proposes that the Court authorize the use of Cash Collateral on an interim basis in accordance with the Interim Order which, in summary, provides for the following:

- The Debtor may use Cash Collateral in accordance with the Budget, attached hereto as **Exhibit A**, provided, that for any expenditure line item provided in the Budget in any given month, the Debtor may use Cash Collateral in excess of such amount set forth in the Budget, so long as the percentage deviation for all expenditures during such month shall not exceed 15%, in the aggregate, of the total amount set forth in the Budget for all expenditures.  The Budget

provides for payment of postpetition operating expenses and expenses of administrating the Chapter 11 Case including, mainly, costs and expenses necessary to maintain and operate the restaurant, other expenses in respect of the Debtor's day-to-day operations, and professional fees and expenses associated with the administration of this Chapter 11 Case.

## **Basis for Relief**

**A.    The Proposed Use of Cash Collateral Is Appropriate and Should Be Authorized**

11.    The Court should authorize the Debtor to use cash, including Cash Collateral, whether such Cash Collateral exists as of the Petition Date or arises thereafter.  A copy of a proposed budget for the use of cash during the next 6 months (the "**Budget**") is attached hereto as **Exhibit A**.  It is essential to the continued operation of the Debtor's business that the Debtor obtains authority to use cash to maintain its business, for payment of lease obligations, insurance premiums, utilities, payroll and other maintenance expenses and to fund the cost of administering this Chapter 11 Case.  The Debtor will maintain a detailed accounting of all expenses funded by the Cash Collateral generated by its business.  The Debtor will also timely file its monthly operating reports as required in its Chapter 11 bankruptcy case.

12.    If the Debtor is permitted to use cash, including Cash Collateral, to fund ongoing business operations and administration of this Chapter 11 Case in accordance with the Budget, the Debtor currently projects that ordinary and anticipated cash flows will be able to cover expenses for the foreseeable future.  Thus, the Debtor can continue to run its business successfully, but only if it is allowed to use its cash, including Cash Collateral, in the course of its day-to-day operations and to fund the administration of this Chapter 11

Case.  Without such use, the detrimental result to the estate will be rapid and ultimately disastrous given the nature of the Debtor's business.

13.    Section 363(c)(2) of the Bankruptcy Code sets forth the requirements for a debtor's proposed use of cash collateral, and provides, in pertinent part that:

> [t]he trustee [or debtor in possession] may not use, sell, or lease cash collateral … unless –    (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).[1]

14.    Section 105(a) of the Bankruptcy Code also allows that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The Debtor respectfully submits that the proposed use of Cash Collateral is necessary to preserve the Debtor's business during the Chapter 11 Case, and will avoid immediate and irreparable harm to the Debtor's estate and creditors.  Such use prejudices no one; it affirmatively and directly benefits the estate and creditors by enhancing the prospects of a successful outcome of the Chapter 11 Case.

15.    Additionally, section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee [or debtor in possession], the court, with or without a hearing, shall prohibit or

---

[1]    Section 363(a) of the Bankruptcy Code defines "cash collateral" as:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title[.]

11 U.S.C. § 363(a).

5

condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (1) "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in the property;" (2) "additional or replacement lien[s] to the extent that the use [of cash collateral] will cause a decrease in the value of such entity's interest in the property;" and (3) "granting such other relief … as results in the realization by the entity of the indubitable equivalent of such entity's interest in the property." 11 U.S.C. § 361.

16. Moreover, the relief requested in this Motion is appropriate under section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

**B.    Secured Creditors are Adequately Protected**

17. Adequate protection under the Bankruptcy Code is designed to protect the secured lender from diminution in the value of its interest in the collateral as a result of a debtor's proposed use or disposition of such collateral. The legislative history of section 361 of the Bankruptcy Code makes clear that bankruptcy courts are given broad flexibility in deciding what constitutes adequate protection on a case-by-case basis. Specifically, the legislative history provides:

> This section specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept.

6

H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977); see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.").

19.    The principal purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such interest. See In re Swedeland Dev. Group, Inc., 16 F.3d at 564 ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (quoting In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987)); accord In re DeSardi, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006) ("The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case."); In re Hollins, 185 B.R. 523, 528 (Bankr. N.D. Tex. 1995) ("Adequate protection seeks to protect a creditor from an [sic] decline in the value of its collateral . . . .").

20.    Nevertheless, the "Court is not obligated to protect the creditor better than it did itself when making the loan and obtaining security."  In re Heatron, Inc., 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980).  The interest to be protected by virtue of the adequate protection requirement is the lesser of the amount of the debt or the value of assets securing the debt as of the Petition Date.  See In re Alyucan Interstate Corp., 12 B.R. 803, 808 (Bankr. D. Utah 1981) ("[T]he 'interest in property' entitled to protection is not measured by the amount of the debt but by the value of the lien.").  The Debtor has the burden of proof on the issue of adequate protection. See 11 U.S.C. § 363(p)(1).

a.  **Secured Creditors are Adequately Protected by the Debtor's Continued Operation of Its Businesses**

21.  Courts routinely hold that adequate protection may be demonstrated by a showing that the going concern value of the debtor's, or the value of the lender's collateral, is preserved by the debtor's continuing operations and use of cash collateral.  See, e.g., In re JKJ Chevrolet, Inc., 117 F.3d 1413, 1413 (4th Cir. 1997) (allowing use of cash collateral to operate automobile dealership as long as continued operations maintained the value of the business); In re Snowshoe Co., Inc., 789 F.2d 1085, 1087-89 (4th Cir. 1986) (allowing use of cash collateral to operate ski resorts where trustee reported that ski resort would lose 50% to 90% of its fair market value if it ceased operations); In re 499 W. Warren St. Assocs., Ltd. P'ship, 142 B.R. 53, 56-57 (Bankr. N.D.N.Y. 1992) (finding secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on collateral property); In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor entitled to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral).

22.  In the present case, the Merchants are adequately protected by virtue of the Debtor's continued operation of its business and the expenditure of cash maintaining its business.  In stark contrast to a going concern, in a liquidation or foreclosure scenario, the value of the Debtor's business will be severely impacted.  Even under the most conservative multiples for going concern value, going concern value generally exceeds liquidation value. Accordingly, expenditures of cash collateral to preserve and maintain the underlying business operations provide additional adequate protection to a secured creditor.  See, e.g., In re 499 W. Warren St. Assocs., Ltd. P'ship, 142 B.R. 53, 56-57 (Bankr. N.D.N.Y. 1992) (finding secured creditor's interest in collateral adequately protected when cash collateral applied to

8

normal operating and maintenance expenditures on collateral property); In re Willowood East Apartments of Indianapolis II, Ltd., 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (finding secured creditor's interest in assigned rents extended only to net rents after payment of ordinary, necessary expenses required to maintain and operate the property to preserve its value.). Thus, it is essential to the maintenance of the Debtor's business that the Debtor's operations are maintained as a going concern.

23. Without the ability to use Cash Collateral, the Debtor will be unable to maintain its business and the income stream generated therefrom. Moreover, without the use of Cash Collateral, the Debtor would be forced to cease its business operations to the detriment of the Debtor's estate, its creditors and other parties in interest. See, e.g., In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citing In re Grant Broad. of Philadelphia, Inc., 71 B.R. 376, 386-89 (Bankr. E.D. Pa. 1987), aff'd, 75 B.R. 819 (E.D. Pa. 1987), and In re Alyucan Interstate Corp., 12 B.R. at 809-12; accord In re Triplett, 87 B.R. at 27 ("[R]estriction of the use of cash collateral should only occur where the facts show that failure to restrict use may 'impair' the creditor and deny the creditor adequate protection.").[2]

24. Accordingly, the interests of the Merchants (as well as those of the Debtor's other creditors and parties in interest) will be best served by permitting the Debtor's continued use of cash, including Cash Collateral. If the Debtor is allowed to continue the use

---

[2] Moreover, even to the extent some diminution in value did occur, section 507(b) of the Bankruptcy Code provides prepetition secured creditors which suffer a diminution in the value of their prepetition collateral as a result of their property being sold or used by the Debtor pursuant to section 363 of the Bankruptcy Code with a superpriority claim in an amount equal to such diminution.

of its cash generated from the business, the Debtor will continue to operate and maximize the value of its bankruptcy estate for its creditors.

    **b.**    <u>**Adequate Protection to Merchants is**</u>
           <u>**Supplemented by the Grant of Replacement Liens**</u>

25.    The Debtor anticipates generating positive cash flow from operating its business. Thus, new cash and cash-generating assets, including accounts receivable, will become available for replacement liens at a greater rate than cash is spent.  This form of adequate protection is commonplace.  <u>See</u> 11 U.S.C. § 361(2) (providing for replacement liens as a form of adequate protection); <u>MBank Dallas, N.A. v. O'Connor (In re O'Connor)</u>, 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing the debtor to replace a lien on cash with a lien on property likely to be worth five times as much); <u>In re Center Wholesale, Inc.</u>, 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor).  Therefore, adequate protection for the Merchants can be provided and maintained through a grant of post-petition replacement liens and security interests to the extent of any diminution in value of the Prepetition Collateral (the "**Replacement Liens**", which together with the Additional Replacement Liens (defined below) shall be "**Adequate Protection Liens**"), subject to the Carve-Out rights and security interests granted to any debtor in possession lender.

    **c.**    <u>**Limitation on Grant of Adequate Protection**</u>
           <u>**Liens and Reservation of Rights**</u>

26.    As of the date hereof, the Debtor has not performed a perfection analysis to determine the validity and enforceability of the liens of the Merchants, including the liens on purported Cash Collateral.  Accordingly, the request for relief herein should not be construed as an admission by the Debtor as to the validity and enforceability of any of liens and the

Debtor is not waiving its right to challenge the extent priority or validity of any lien secured by the Debtor's assets or any right to avoid any lien secured by the Debtor's assets pursuant to sections 542 and 551 of the Bankruptcy Code. Additionally, the Debtor is not waiving the right to dispute the issue of what portion, if any, of its funds constitute Cash Collateral or the right to dispute the debt or lien of any other creditor.

27. Furthermore, as stated herein, the grant of adequate protection, including the grant of Adequate Protection Liens, should be limited to the diminution of the value of the secured lender's collateral, and solely to the extent such secured lender establishes valid and fully perfected liens in such collateral.

28. In addition, certain of the Debtor's contractors, who supply the Debtor with certain materials and work on the real property, may have the right to assert liens on the Debtor's assets. To the extent the Debtor uses Cash Collateral, such contractors or entities other than the Merchants, that hold valid, duly perfected, non-avoidable liens that are superior to all other liens on the relevant collateral, the Debtor proposes that such entities be granted replacement liens on the proceeds of such Other Lienholders' collateral, to the extent of the diminution of value of such collateral, which liens shall have the same priority, validity, force and effect as the lien that they replace; subject, however to all defenses, claims and counterclaims the Debtor may have against such liens or the claims underlying such liens and to the rights and security interests granted to any debtor in possession lender.

**Alternative Relief:**
**The Need to Surcharge the Prepetition Collateral if**
**the Debtor is Not Granted Use of Cash Collateral**

29. Section 506(c) of the Bankruptcy Code allows a debtor in possession to surcharge a secured creditor for expenses incurred in preserving, protecting, enhancing the value of, or disposing of the secured creditor's collateral. See 11 U.S.C. § 506(c). To

recover under section 506(c) of the Bankruptcy Code, the debtor in possession must make payments on account of reasonable and necessary expenses primarily to protect, preserve, enhance the value of, or dispose of collateral, which payments provide a "direct and quantifiable benefit" to the secured creditor.  See In re Compton Impressions, Ltd., 217 F.3d 1256, 1262 (9th Cir. 2000) (allowing the debtor to surcharge the secured creditor for legal fees to the extent that debtor's counsel assisted in the sale of the collateral property); In re Orfa Corp. of Philadelphia, 149 B.R. 790 (Bankr. E.D. Pa. 1993), vacated on other grounds, 1994 WL 163666 (E.D. Pa. April 26, 1994) (allowing the trustee to surcharge the secured creditor for its services to the degree that its services protected the value of the secured creditor's collateral); In re Cann & Saul Steel Co., 86 B.R. 413, 418 (Bankr. E.D. Pa. 1988) (allowing professional fees that benefited the secured creditor to be surcharged against its collateral).

30.    Here, the expenses that will be incurred in running and maintaining the Debtor's business are necessary and reasonable because it will allow the Debtor to maintain operations on a going concern basis.   If the Debtor maintains operations as a going concern through the use of some hypothetical working capital, the value of the any Prepetition Collateral will not only be preserved, but is likely to be enhanced.   Moreover, the Merchants will certainly recover more through the Debtor's efforts in contrast to a liquidation.   Merchants will receive a direct and quantifiable benefit because these claims represent a major portion of the Debtor's debt obligations and the assets securing these claims will be preserved on a going concern basis which will ultimately provide a greater return than Merchants would receive in a liquidation or foreclosure scenario.   See Equitable Gas Co. v. Equitable, N.A. (In re McKeesport Steel Castings Co.), 799 F.2d 91, 94-95 (3d Cir. 1986) (holding that postpetition

gas services were properly ordered paid to a utility as an administrative expense necessary to preserve the going concern value of chapter 11 debtor's estate since, "the continued gas service . . . benefited both [secured creditors] in that it preserved the Debtor's business and permitted the sale of the assets as a going concern which provided a greater return to the secured parties than they would have received in other circumstances"); In re Senior-G & A Operating Co., Inc., 957 F.2d 1290, 1300 (5th Cir. 1992) (holding that secured creditor received "direct and quantifiable benefit" from postpetition oil well restoration, for purpose of determining whether restoration expense could be surcharged to secured creditor, where secured creditor, prior to restoration, was receiving no revenue as result of production from well, and after restoration, it was receiving revenue from restored production).  For all of the foregoing reasons, Merchants should be surcharged pursuant to section 506(c) of the Bankruptcy Code.

### The Need for Immediate Relief Pending a Final Hearing

31.    Pursuant to Bankruptcy Rule 4001(b), a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after service of such motion.  The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 15-day period and to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

32.    The Ninth Circuit has recognized that immediate interim relief may be crucial to the success of a business reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is perilous process, seldom more so that at the outset of the proceeding when the debtor is often without sufficient cash flow to fund a central business operation.  In re Sullivan, 2 B.R. at 355.

In re Center Wholesale, Inc., 795 at 1449 n 21.

13

33.    Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court (i) schedule the Interim Hearing and a Final Hearing to consider approval of the Debtor's use of Cash Collateral, (ii) authorize the Debtors, pursuant to the terms of the Interim Order, to use Cash Collateral in accordance with the Budgets pending the Final Hearing, and (iii) grant any other relief this Court deems necessary and proper.  If the Debtor is unable to obtain the immediate use of Cash Collateral and is denied the ability to use the revenues generated from its business pending the Final Hearing, it will be unable to maintain and operate its business and the Debtor will be forced to cease business operations with a concomitant immediate and irreparable harm to the value of its business and estate.  Therefore, the Debtor respectfully requests that the Court schedule Interim and Final Hearings to consider approval of the Debtor's Use of Cash Collateral.

**<u>Notice</u>**

34.    Notice of this Motion has been provided to the Office of the United States Trustee for the District of Nevada, the Debtor's 20 largest unsecured creditors (including counsel if known), the Merchants, and all parties requesting notices pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice need be provided.

35.    No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested herein, including (A)(i) authorizing the Debtor's use of cash, including Cash Collateral, pursuant to the terms of the Interim Order (including the Budget), attached hereto as **Exhibit B**, (ii) finding that the interests of the any purportedly secured party are adequately protected, and (iii) granting related relief, or (B) alternatively, authorizing the Debtor to

14

surcharge any secured lender's collateral pursuant to section 506(c) of the Bankruptcy Code, (c) scheduling interim and final hearings and (d) granting the Debtor such other and further relief as the Court deems just and proper.

Dated this 12th day of August, 2016.

Respectfully Submitted,

/s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Boulevard South, Suite 300
Las Vegas, Nevada 89119
Proposed Attorneys for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent electronically via the Court's CM/ECF system on August 12, 2016, to the following:

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. First Class mail on August 12, 2016, to the following:

United States Trustee
300 Las Vegas Blvd. South #4300
Las Vegas, NV 89101

Clark County Assessor
c/o Bankruptcy Clerk
500 S Grand Central Pkwy
Box 551401
Las Vegas, NV 89155-1401

Clark County Treasurer
c/o Bankruptcy Clerk
500 S Grand Central Parkway
PO Box 551220
Las Vegas, NV 89155-1220

Dept of Employment, Training and Rehab
Employment Security Division
500 East Third Street
Carson City, NV 89713

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Nevada Dept of Taxation, BK Section
555 E. Washington Ave. #1300
Las Vegas, NV 89101

State of Nevada Dept. of Motor Vehicles
Attn: Legal Division
555 Wright Way
Carson City, NV 89711

Consolidated Electrical Distributors Inc.
c/o The Corporation Trustee Co. of NV
Resident Agent
701 S. Carson Street, Suite 200
Carson City, NV 89701

IMG College, LLC
PO Box 16533
Palatine, IL 60055

Innovative Advertising Strategies
242 Lafayette Circle Suite B2
Lafayette, CA 94549

Jason M. Vita
2249 Gondi Castle Avenue
Henderson, NV 89044

Kevin Le
4105 Demoline Circle
Las Vegas, NV 89141

Pearl Gamma Funding, LLC
c/o Ariel Bouskila, Esq.
MCA Servicing - Counsel
40 Exchange Place, Suite 1306
New York, NY 10005

SBF Finance and Technology LLC
2200 Renaissance Blvd., Ste 170
King of Prussia, PA 19406-2794

Soligent Distribution, LLC
1500 Valley House Drive, Suite 210
Rohnert Park, CA 94928

Strategic Funding Source, Inc.
Acct No xx5122
120 West 45th Street
New York, NY 10036

Sunedison
600 Clipper Drive
Belmont, CA 94002

Sunpower Corporation
77 Rio Robles
San Jose, CA 95134

WSL Properties, LLC
9061 Santa Monica Blvd.
Los Angeles, CA 90069

/s/Christy L. Cahall
Christy L. Cahall

Exhibit A

| Revenue | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Jan-17 | Feb-17 | Total |
|---|---|---|---|---|---|---|---|
| Construction Income | $ 420,000.00 | $ 420,000.00 | $ 420,000.00 | $ 420,000.00 | $ 420,000.00 | $ 420,000.00 | $ 2,520,000.00 |
| Discounts/Refunds | $ (1,000.00) | $ (1,000.00) | $ (1,000.00) | $ (1,000.00) | $ (1,000.00) | $ (1,000.00) | $ (6,000.00) |
| Services Income | $ 285,000.00 | $ 285,000.00 | $ 285,000.00 | $ 285,000.00 | $ 285,000.00 | $ 285,000.00 | $ 1,710,000.00 |
| Miscellaneous Income | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 30,000.00 |
| **Total Gross Sales** | **$ 709,000.00** | **$ 709,000.00** | **$ 709,000.00** | **$ 709,000.00** | **$ 709,000.00** | **$ 709,000.00** | **$ 4,254,000.00** |

| Expenses | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Jan-17 | Feb-17 | Total |
|---|---|---|---|---|---|---|---|
| Materials | $ 260,000.00 | $ 260,000.00 | $ 260,000.00 | $ 260,000.00 | $ 260,000.00 | $ 260,000.00 | 1,560,000.00 |
| Subcontractors | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | 45,000.00 |
| Payroll - Solar & Electric | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | $ 200,000.00 | 1,200,000.00 |
| Payroll - Office & Administrative | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 | 510,000.00 |
| Marketing/Advertising | $ 70,000.00 | $ 70,000.00 | $ 70,000.00 | $ 70,000.00 | $ 70,000.00 | $ 70,000.00 | 420,000.00 |
| Vehicle/Gas | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | 90,000.00 |
| Insurance | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | 90,000.00 |
| Operating Costs/Administrative | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | 150,000.00 |
| Travel/Lodging | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | 15,000.00 |
| Utilities | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | 15,000.00 |
| Rent | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | 36,000.00 |
| Chapter 11 Admin/Legal | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | 60,000.00 |
| Adequate Protection - Strategic | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | 30,000.00 |
| Adequate Protection - SBF | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | 9,000.00 |
| Adequate Protection - Pearl | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | 15,000.00 |
| **Total Expenses** | **$ 707,500.00** | **$ 707,500.00** | **$ 707,500.00** | **$ 707,500.00** | **$ 707,500.00** | **$ 707,500.00** | **4,245,000.00** |

| **TOTAL NET INCOME** | **$ 1,500.00** | **$ 1,500.00** | **$ 1,500.00** | **$ 1,500.00** | **$ 1,500.00** | **$ 1,500.00** | **$ 9,000.00** |

Exhibit B

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: 16-14459-led |
| | ) | |
| Sunpower by Renewable Energy Electric, Inc., | ) | Chapter 11 |
| | ) | |
| | ) | Interim Hearing Date: |
| Debtor. | ) | Interim Hearing Time: |
| _____ | ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108, AND RULES 4001(b), 6003 AND 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR THE ENTRY OF INTERIM AND FINAL ORDERS (A)(I) AUTHORIZING THE USE OF CASH, INCLUDING CASH COLLATERAL, (II) FINDING THAT THE INTERESTS OF THE PREPETITION LENDER AND ANY OTHER PURPORTEDLY SECURED PARTY ARE ADEQUATELY PROTECTED, AND (III) GRANTING RELATED RELIEF, OR (B) ALTERNATIVELY, AUTHORIZING THE DEBTOR TO SURCHARGETHE PREPETITION COLLATERAL, AND (C) SCHEDULING INTERIM AND FINAL HEARINGS**

1

Upon the motion, dated August 12, 2016 (the "**Motion**")[1] of Sunpower by Renewable Energy Electric, Inc. (the "**Debtor**") seeking, among other things, emergency use of cash collateral pursuant to Sections 105, 361, 363, 364, 1107 and 1108 of the United States Code (11 U.S.C. §§ 101, et seq.) (the "**Bankruptcy Code**"); and upon consideration of the Declaration of Jason Vita in Support of the Motion; and this Court having core jurisdiction over this matter; and an interim hearing on the Motion having been held before this Court on _____, 2016 (the "**Interim Hearing**"); and it appearing that due notice as set forth in the Motion, of the Motion and the Interim Hearing, is sufficient under the circumstances, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtor and its estate and creditors; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, this Court makes the following findings and enters its Order, all as set forth below:

## FINDINGS AND CONCLUSIONS

A.      Petition. The Debtor commenced its Chapter 11 case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 12, 2016 (the "**Petition Date**") in the United States Bankruptcy Court for the District of Nevada (this "**Court**").

B.      Jurisdiction.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      Notice. The Cash Collateral Motion was filed on August 12, 2016, and

---

[1]      Capitalized terms used but not defined herein have the meanings given them in the Motion.

2

it appears that due notice as set forth in the Cash Collateral Motion, is sufficient under the circumstances, and that no other or further notice need be provided; and all objections to entry of this Interim Order having been resolved or overruled.

        D.     <u>No Trustee or Committees Yet Appointed</u>.    The Debtor intends to operate its business and manage its affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases, and no committees have been appointed or designated.

        E.     <u>Use of Cash Collateral</u>.    In order to avoid immediate and irreparable harm to the estate, the Debtor requires the use of cash collateral to fund its expenses and this Chapter 11 case.

        F.     <u>Good Cause for Entry of Order</u>.  The Debtor asserts that entry of this Interim Order is in the best interests of the Debtor, its creditors, and the bankruptcy estate, because it will allegedly: (i) minimize the disruption to the Debtor's business and ongoing operations; and (ii) preserve and maximize the value of the Bankruptcy Estate's assets and recovery to creditors.

<u>**ORDER**</u>

Based on the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED that:

        1.     The Motion is granted on an interim basis.

        2.     Subject to the terms and conditions of this Order, the Debtor may use its cash, including any Cash Collateral, during the period (the "**Interim Period**") from the Petition Date through and including the date of the Final Hearing (defined below).

        3.     Except as otherwise expressly provided in this Order, Cash Collateral may be used (a) during the Interim Period, (b) for the purposes identified in the budget attached as <u>Exhibit A</u> hereto (as it may be modified from time to time upon order of the Court, (the

3

"**Budget**"), and (c) in respect of aggregate expenditures in the Budget for each month, in an amount not to exceed 15% of the amount specified for aggregate expenditures for such month; provided that any amount in any expenditure line item not expended in any week during the Interim Period may be added to any expenditure line items in any subsequent months (on a cumulative basis) during the Interim Period.

4.    The Debtor is also authorized to use Cash Collateral to pay (i) costs, fees and expenses related to the administration of the Chapter 11 Case, and (ii) any other administrative expenses approved by this Court.

5.    Nothing in this Order shall be construed to prejudice the Debtor's right, in the event that the liens securing the Prepetition Loan Obligations are invalidated, subordinated or otherwise avoided or the Prepetition Loan Obligations are invalidated, subordinated, avoided or are determined to be undersecured, to seek to disgorge such payments (or any other payments made pursuant hereto) or to recharacterize such payments (or any other payments made pursuant hereto) as payments of principal.

6.    To the extent the Debtor uses cash which comprises Cash Collateral of entities ("**Other Secured Parties**") in respect of such Other Secured Parties' valid, duly perfected, non-avoidable liens on any assets or property of the Debtor which, as of the Petition Date, were superior to all other liens on such collateral, such Other Secured Parties shall also be granted Adequate Protection Liens to the extent of the net diminution of such Other Secured Parties interest in their respective collateral resulting from the use of such Cash Collateral; subject, however to all defenses, claims and counterclaims the Debtor may have against such liens or the claims underlying such liens.

4

7.      This Order and the use of purported Cash Collateral authorized herein shall become effective immediately upon authorization and approval by this Court.  Except with respect to the payment of accrued items set forth in the Budget, and unless ordered otherwise by the Court, the use of purported Cash Collateral authorized herein shall terminate at 12:00 midnight, prevailing Las Vegas time, on the date of the Final Hearing, subject to the Debtor's right to seek a further order of this Court authorizing continued use of Cash Collateral on these or different terms.  Termination of the use of Cash Collateral authorized herein shall not impair the continuing effectiveness and enforceability of all other provisions in this Order.

8.      Notwithstanding anything contained elsewhere in this Order to the contrary, the Debtor shall in no way be prejudiced from proposing debtor in possession loans and other post-petition financial accommodations pursuant to Sections 363 and 364 of the Bankruptcy Code on any terms whatsoever (including with liens priming the adequate protection liens and superpriority administrative claims).

9.      Any party seeking to object to entry of an order approving the relief set forth in the Motion on a final basis must file a written objection (an "**Objection**"), stating with particularity the grounds therefor, with the Court and serve such Objection on:  (i) Debtor's counsel, Schwartz Flansburg PLLC, 6623 Las Vegas Blvd. South, Suite 300, Las Vegas, Nevada 89119 (Attention: Samuel A. Schwartz, Esq.); and (ii) the Office of the United States Trustee; so that it is received no later than _____, 2016 at 5:00 p.m., prevailing Pacific time.

10.     A final hearing (as it may be adjourned from time to time), to consider the Debtor's request for approval of the Motion shall be held before the undersigned on _____, 2016, at _____, prevailing Las Vegas time.

5

11.     No provision contained herein is intended to or should be construed as a determination as to the value, validity, priority or enforceability of any claim against the Debtor or any lien on any assets or property of the Debtor, or a waiver of the Debtor's rights to dispute any such claim or lien.

12.     The findings of fact and conclusions of law of this Court pursuant to this Order shall be deemed effective upon the entry of this Order.  To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed such.

13.     This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Submitted by:

SCHWARTZ FLANSBURG PLLC

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, NV 89119
Proposed Attorneys for the Debtor

**SUBMISSION TO COUNSEL FOR APPROVAL PURSUANT TO LR 9021**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

\_\_\_\_\_ The court has waived the requirement set forth in LR 9021(b)(1).

\_\_\_\_\_ No party appeared at the hearing or filed an objection to the motion.

\_\_\_\_\_ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

\_\_\_\_\_ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

APPROVED:

DISAPPROVED:

FAILED TO RESPOND:

Submitted by:

SCHWARTZ FLANSBURG PLLC

By: /s/ Samuel A. Schwartz\_\_\_\_
Samuel A. Schwartz, Esq., NBN 10985
Bryan A. Lindsey, Esq., NBN 10662
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, NV 89119
Proposed Attorneys for the Debtor

# # #

7