Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 16-14459-LED |
| Sunpower by Renewable Energy Electric, Inc., | Chapter 11 |
| Debtor. | |

STATE OF NEVADA    )
                   )   ss:
COUNTY OF CLARK    )

**DECLARATION OF JASON M. VITA IN SUPPORT
OF BANKRUPTCY FILING AND FIRST DAY MOTIONS**

Jason M. Vita, as President of Sunpower by Renewable Energy Electric, Inc., being duly sworn, deposes and says:

1. I am over the age of 18, mentally competent and make this declaration in support of the voluntary Chapter 11 bankruptcy filing of Sunpower by Renewable Energy Electric, Inc. (the "**Debtor**").

2. On August 12, 2016 (the "**Petition Date**"), the Debtor filed its voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "**Bankruptcy Code**").

3.      The Debtor is a solar energy company and provides solar energy services, including the assessment and installation of solar panels to residential and commercial customers in Nevada, Arizona and California.

4.      Over the past several months, the Debtor's revenues did not enable it to pay all of its debts as they became due, and as a result, the Debtor's revenue issues caused the Debtor to obtain business loans, whereby the Debtor was not able to make both its business loan payments and its ongoing business operating expenses. As a result of the foregoing and the Debtor's desire to continue its business operations, on the Petition Date, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On August 12 and August 15, 2016, the Debtor filed the following first day motions and applications for its Chapter 11 case:

a.    Application for the Entry of an Order Pursuant to 11 U.S.C. §§ 327(a), 328, 329 and 331 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure authorizing the employment and retention of Schwartz Flansburg PLLC ("**SF**") as counsel for the Debtor (the "**Retention Application**");

b.    Motion for the Entry of an Order under sections 363, 364, 1107 and 1108 of title 11 of the Bankruptcy Code Authorizing the Debtor to (i) Maintain Existing Bank Accounts; (ii) Continue to Use its Existing Business Forms; (iii) Continue to Use Its Existing Cash Management System; and (iv) Continue Using Existing Investment Practices (the "**Bank Accounts Motion**");

c.    Motion for an Order (i) prohibiting the Debtor's utility service providers from altering, refusing, or discontinuing services, and (ii) establishing procedures for determining requests by the utility service providers for additional adequate assurance of payment (the "**Utilities Motion**");

     d. Motion to Extend the Deadline to File Schedules and Statements (the "**Schedules Motion**");

     e. Motion for the Entry of Interim and Final Orders Authorizing, But Not Directing, he Debtor to (i) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (ii) Pay and Honor Employee Medical and Other Benefits, and (iii) Continue Employee Wages and Benefits Programs (the "**Employee Wages Motion**");

     f. Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b) Authorizing the Debtor to Pay Prepetition Claims of Critical Vendors (the "**Critical Vendors Motion**");

     g. Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 and 1108 and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Cash, Including Cash Collateral, (ii) Finding that the Interests of the Prepetition Lender or Any Other Purportedly Secured Party are Adequately Protected, and (III) Granting Related Relief, or (B) Alternatively, Authorizing the Debtor to Surcharge the Prepetition Collateral, and (C) Scheduling Interim and Final Hearings (the "**Cash Collateral Motion**"); and

     h. Motion for an Order Compelling Creditors to Turnover Property of the Estate and For an Accounting (the "**Motion for Turnover**").

**Retention Application**

6. In July 2016, the Debtor retained SF as its attorneys to prepare the filing of a Chapter 11 petition and the prosecution of its Chapter 11 case.

7. The Debtor selected SF as its attorneys because of the firm's prepetition experience with, and knowledge of, the Debtor's business, as well as its experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

8. At this time, the SF's continued representation of the Debtor in this bankruptcy case is critical to the success of the Debtor's reorganization because SF is uniquely familiar with the Debtor's business and legal affairs.

**Bank Accounts Motion**

9. At the time of this bankruptcy, the Debtor maintains bank accounts with US Bank, N.A., which are used to manage cash, receipts and disbursements for the business. The Debtor routinely deposits, withdraws, and otherwise transfers funds to and from these bank accounts. Importantly, the Debtor's merchant process servers routinely deposit funds from the Debtor's credit card receipts into these bank accounts. These bank accounts are essential to the continued operation of the Debtor's business. The Bank Accounts Motion seeks authority for the Debtor to (i) maintain its existing bank accounts, (ii) continue to use its existing business forms, (iii) continue to use its existing cash management system, and (iv) continue using existing investment practices.

10. In addition, the Debtor set up a new, debtor-in-possession bank account at US Bank (the "**DIP Account**"). The Bank Accounts Motion requests that to the extent the Debtor's merchant process servers are holding funds belonging to the Debtor, that such merchant process servers be required to deposit the Debtor's funds into the DIP Account.

**Utilities Motion**

11. The Debtor's utilities consist of accounts with Nevada Energy, Republic Services, Cox Cable – Business, Verizon and Southwest Gas, which are needed to provide power, water, gas, phone, internet and cable TV service to the Debtor's business.

12. Power, gas, water, telephone, cable, and internet facilities must be provided to the Debtor's business offices in order for the Debtor to continue operating its solar business and providing customer service to its clients. At this time, the Debtor cannot afford the risk of utility providers

terminating utility services to any of the Debtor's business offices.  The Utilities Motion requests an order of this Court (i) prohibiting the various utility providers from altering, refusing or discontinuing services or requiring additional deposits or other security on account of the commencement of the Debtor's Chapter 11 Case or any pre-petition claims, (ii) establishing procedures for determining requests for additional adequate assurance of payment, and (iii) granting such other and further relief as is just and proper.

**Schedules Motion**

13. Due to the emergency nature of the filing of this Chapter 11 case and considering the complexity of the Debtor's financial affairs, the Debtor has not been afforded the opportunity to properly prepare a Chapter 11 filing.  As a result, the Debtor requires additional time to assemble the information necessary to complete its schedules and statements, in order to ensure that all schedules and statements are complete and accurate.  The Schedules Motion requests forty-five (45) days from the Petition Date to complete and file the Debtor's schedules and statements.

**Employee Wages Motion**

14. As of August 12, 2016, the Debtor employed approximately 90 full-time and part-time employees (the "**Employees**"), and 5 independent contractors (the "**Independent Contractors**").

15. The Debtor seeks court authority to pay and honor, in the ordinary course of business and in its sole discretion, any pre-petition claims and obligations related to, and to continue to pay and honor in the ordinary course on a post-petition basis, all of the Employee wages and benefits (as defined in the Employee Wages Motion).  The Debtor also request that the Court authorize and direct financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to prepetition employee obligations.

16. Although the Debtor believes that all Employee Wages and Benefits are vital to the Debtor's business, the Debtor seeks authority to maintain and make payments only on account of those Employee Wages and Benefits that the Debtor believes is necessary to prevent immediate and irreparable harm to the Debtor's business.

**Critical Vendors Motion**

17. As part of its normal solar operations, the Debtor relies upon and requires the delivery and performance of various suppliers and vendors who provide critical goods and services to continue the Debtor's solar business operations. The Debtor will continue to require the same goods and services during the pendency of its Chapter 11 case. As a result, the Debtor has post-petition on-going commitments to provide the critical goods and services as its establishment.

18. As managing member of the Debtor, I believe it is in the best interests of the Debtor's estate and creditors that the Debtor obtain authority to pay the critical vendors in the ordinary course of business, including those invoices that request payment on account of and based upon prepetition activity.

19. The Debtor's vendors which I believe are critical (the "**Critical Vendors**") include the following companies and individuals, as well as the approximate amount of debt each is owed as of the filing of the bankruptcy case:

| Vendor: | Amount Owed: |
|---|---|
| Consolidated Electrical Distributors, Inc. | $208,000.00 |
| Quality Electric Distribution, Inc. | $ 15,000.00 |
| HML Electric Parts, LLC | $  7,500.00 |
| SunPower Corporation | $525,000.00 |
| Soligent Distribution, LLC | $ 45,000.00 |
| Innovative Advertising Strategies, LLC | $ 21,000.00 |
| Kevin Le | $ 45,000.00 |
| David Mejia | $ 65,000.00 |

20. I believe the failure to pay the above Critical Vendors' claims could require the Debtor to incur higher costs for such goods or services post-petition if it has to procure the same from alternative sources or on less favorable terms than those existing as of the Petition Date.  The failure to pay the Critical Vendors may cause the Debtor to lose sales or future revenues or comply with existing commitments to provide services and goods to its solar operations.

21. I believe paying the Critical Vendors will allow the Debtor's business operations to continue, which in turn, will allow the Debtor to generate the necessary revenues to facilitate a successful reorganization.  I also believe $125,000.00 is sufficient to negotiate terms with the Critical Vendors on a going forward basis.

22. If the Debtor were required to replace the Critical Vendors as vendors, such an effort would consume a significant amount of management's time, distract management from focusing on proposing and developing a plan of reorganization, and possibly cost the estate substantially more than simply paying the Critical Vendors to ensure that the Debtor's business functions during the Chapter 11 Case with few distractions and disruptions.

23. If the Debtor sought alternative suppliers, the process would be severely disruptive to the business operations, at a time when profit margins in the industry are already extremely thin.  If the Debtor were to cease business operations, even for a short time due to the lack of product, the Debtor would be irreparably harmed.  Therefore, it is essential that the Debtor be authorized to pay the Critical Vendors in order to preserve the value of the Debtor's assets and continue to operate its business with minimal disruption.

///

///

**Cash Collateral Motion**

24. As stated in the Cash Collateral Motion, the Debtor derives practically all of its income from the revenues it receives from its solar business operations. The Debtor depends on the revenues, in part, to maintain its business operations, including the payment of expenses for lease obligations, payroll, utilities and vendors.

25. Without the ability to use the business revenues, the Debtor will be unable to maintain the business operations, including the payment of all necessary expenses. Moreover, the failure to pay the aforementioned expenses will result in an inability to maintain the income stream generated from the Debtor's business operations. Consequently, if the Debtor is unable to use its business revenues, it will be forced to abandon the leased premises to the detriment of the Debtor's estate, its creditors and other parties in interest.

26. As President of the Debtor, I prepared the budged attached to the Cash Collateral Motion, which is a good faith estimate of projected income and expenses of the Debtor for the next 6 months. The Debtor will maintain a detailed accounting of all expenses funded by the cash collateral generated by its business operations.

**Motion for Turnover**

27. The filing of this bankruptcy case was precipitated by the efforts of Pearl Gamma Funding, LLC to seize (a) the Debtor's funds at US Bank, and (b) the Debtors accounts receivable owed by Helix Electric, Inc. As a result, US Bank froze the Debtor's accounts and Helix Electric, Inc. refused to make its payments until it could determine the proper party to pay. Accordingly, the Debtor filed the Motion for Turnover to make certain both US Bank and Helix Electric, Inc. timely return the funds at issue, which in turn will aid the Debtor in avoiding as much business interruption from the bankruptcy filing as possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 12 day of August, 2016.

_____
Jason M. Vita, President of
Sunpower by Renewable Energy Electric, Inc.,