Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | CASE NO.:  16-14459-GS |
| | ) | |
| Sunpower by Renewable Energy Electric, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hearing Date:  June 814, 2017 |
| | ) | Hearing Time:  21:30 p.m. |
| | ) | |
| _____ | ) | |

**FIRST SECOND AMENDED DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION OF
SUNPOWER BY RENEWABLE ENERGY ELECTRIC, INC.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

1

THE VOTING DEADLINE IS 5:00 P.M. PREVAILING PACIFIC TIME ON _____, 2017 (UNLESS THE DEBTOR EXTENDS THE VOTING DEADLINE).

TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE DEBTOR'S COUNSEL, SCHWARTZ FLANSBURG PLLC, 6623 LAS VEGAS BOULEVARD SOUTH, SUITE 300, LAS VEGAS, NEVADA, 89119, ATTN: SAMUEL A. SCHWARTZ, ESQ. MUST ACTUALLY RECEIVE YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.

---

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN AND ANY EXHIBITS ATTACHED HERETO IS HIGHLY SPECULATIVE, AND SUCH DOCUMENTS SHOULD NOT BE RELIED UPON IN MAKING INVESTMENT DECISIONS WITH RESPECT TO THE DEBTOR OR ANY OTHER ENTITIES THAT MAY BE AFFECTED BY THIS CHAPTER 11 CASE.

---

PRESERVATION OF AVOIDANCE ACTIONS UNDER THE PLAN:

IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTOR WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION AND THAT THE PLAN AUTHORIZES THE REORGANIZED DEBTOR TO PROSECUTE THE SAME.

---

IMPORTANT INFORMATION FOR YOU TO READ

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION OF SUNPOWER BY RENEWABLE ENERGY ELECTRIC, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE TO HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.  THE LIQUIDATION ANALYSIS, DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED.  THEREFORE, ANY ANALYSES, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO

BE ACCURATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. THE SECURITIES DESCRIBED HEREIN WILL BE ISSUED TO CREDITORS WITHOUT REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY SIMILAR FEDERAL, STATE OR LOCAL LAW, AND WILL INSTEAD RELY UPON THE EXEMPTIONS SET FORTH IN SECTION 1145 OF THE BANKRUPTCY CODE TO THE MAXIMUM EXTENT PERMITTED AND APPLICABLE.  THE DEBTOR RECOMMENDS THAT POTENTIAL RECIPIENTS OF ANY SECURITIES PURSUANT TO THE PLAN CONSULT THEIR OWN LEGAL COUNSEL CONCERNING THE SECURITIES LAWS GOVERNING THE TRANSFERABILITY OF ANY SUCH SECURITIES.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTOR'S POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.  RATHER, HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT.  THE DEBTOR OR THE REORGANIZED DEBTOR MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.  ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT. THE DEBTOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTOR'S MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT.  ALTHOUGH THE DEBTOR HAS USED ITS REASONABLE

BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE DEBTOR IS GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO.  HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED.  THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION V HEREIN, "PLAN RELATED RISK FACTORS."

# TABLE OF CONTENTS

I. BACKGROUND TO THE CHAPTER 11 CASE ................................................................................. 8

A.   THE DEBTOR'S HISTORY ............................................................................................................ 8
B.   EVENTS LEADING TO THE CHAPTER 11 FILING ........................................................................ 8

II. EVENTS DURING THE CHAPTER 11 CASE .................................................................................. 8

A.   FIRST DAY MOTIONS AND CERTAIN RELATED RELIEF ............................................................. 8
   1.   Employment of Professionals .......................................................................................... 9
   2.   Stabilizing Operations ...................................................................................................... 9
B.   OTHER EVENTS DURING THE CHAPTER 11 CASE ..................................................................... 9
   1.   Filing of the Schedules ..................................................................................................... 9
   2.   Establishment of the Claims Bar Date ............................................................................ 9

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ...... 10

   Purpose of the Plan of Reorganization ............................................................................. 11~~10~~
   Unclassified Claims ........................................................................................................... 11~~10~~
   Administrative Claims ........................................................................................................ 11
   Priority Tax Claims ............................................................................................................. 11
   Equity Interest of the Debtor ............................................................................................ 15~~14~~
   1.   General Settlement of Claims ......................................................................................... 16~~15~~
   2.   Restructuring Transactions ............................................................................................ 16~~15~~
   4.   Vesting of Assets in the Reorganized Debtor ............................................................... 17~~16~~
   5.   New Equity Interests ....................................................................................................... 17
B.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................... 17
   1.   Assumption and Rejection of Executory Contracts and Unexpired Leases ............... 17
      (a)   Assumption of Executory Contracts and Unexpired Leases ................................. 18~~17~~
      (b)   Approval of Assumptions ....................................................................................... 18~~17~~
      (c)   Assignment of Executory Contracts or Unexpired Leases .................................... 18
   2.   Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ... 19~~18~~
   3.   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ............. 19~~18~~
   4.   Contracts and Leases Entered into After the Petition Date ........................................ 19
C.   PROVISIONS GOVERNING DISTRIBUTIONS ............................................................................ 19
   1.   Distributions for Claims Allowed as of the Effective Date .......................................... 20~~19~~
   2.   Distributions on Account of Claims Allowed After the Effective Date ....................... 20~~19~~
      (a)   Rejection of Executory Contracts or Unexpired Leases ........................................ 20~~19~~
      (b)   Special Rules for Distributions to Holders of Disputed Claims ............................ 20~~19~~
   3.   Delivery and Distributions and Undeliverable or Unclaimed Distributions ............. 20~~19~~
      (a)   Record Date for Distributions ................................................................................ 20~~19~~
      (b)   Special Rules for Distributions to Holders of Disputed Claims ............................ 20
      (c)   Distributions by Distribution Agent ....................................................................... 20
      (d)   Minimum Distributions ........................................................................................... 21~~20~~
      (e)   Undeliverable Distributions .................................................................................... 21~~20~~
   4.   Compliance with Tax Requirements/Allocations ......................................................... 22~~21~~
   5.   Timing and Calculation of Amounts to be Distributed ................................................ 22~~21~~
   6.   Setoffs ............................................................................................................................. 22
D.   PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ......... 23~~22~~

| | | |
|---|---|---|
| 1. | *Resolution of Disputed Claims* .................................................................................... | *23*~~22~~ |
| | (a) | Allowance of Claims .................................................................................................. | 23~~22~~ |
| | (b) | Prosecution of Objection to Claims .......................................................................... | 23~~22~~ |
| | (c) | Claims Estimation ..................................................................................................... | 23~~22~~ |
| | (d) | Expungement or Adjustment of Claims ..................................................................... | 23 |
| | (e) | Deadline to File Objections to Claims ....................................................................... | 23 |
| 2. | *Disallowance of Claims* ............................................................................................... | *24*~~23~~ |
| 3. | *Amendment to Claims* ................................................................................................ | *24*~~23~~ |
| E. | **CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ................ | **24**~~23~~ |
| 1. | *Conditions Precedent to Confirmation* ....................................................................... | *24*~~23~~ |
| 2. | *Conditions Precedent to Consummation* ..................................................................... | *24*~~23~~ |
| 3. | *Waiver of Conditions* .................................................................................................. | *25*~~24~~ |
| 4. | *Effect of Non-Occurrence of Conditions to Consummation* .......................................... | *25*~~24~~ |
| F. | **SETTLEMENT, RELEASE AND RELATED PROVISIONS** ........................................................ | **25**~~24~~ |
| 1. | *Compromise and Settlement* ...................................................................................... | *25*~~24~~ |
| 2. | *Preservation of Rights of Action* ................................................................................ | *25* |
| | (a) | Maintenance of Causes of Action .............................................................................. | 25 |
| | (b) | Preservation of All Causes of Action Not Expressly Settled or Released ...................... | 25 |
| G. | **BINDING NATURE OF THE PLAN** ................................................................................... | **26**~~25~~ |
| **IV.** | **CONFIRMATION AND CONSUMMATION PROCEDURES** ................................................. | **26**~~25~~ |
| A. | SOLICITATION OF VOTES ................................................................................................ | **26**~~25~~ |
| B. | CONFIRMATION PROCEDURES ........................................................................................ | 26 |
| 1. | *Confirmation Hearing* ................................................................................................ | *26* |
| 2. | *Confirmation Hearing Notice* ..................................................................................... | *26* |
| 3. | *Filing Objections to the Plan* ...................................................................................... | *26* |
| C. | **STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN** ..................................... | **27**~~26~~ |
| 1. | *Best Interests of Creditors Test/Liquidation Analysis* .................................................. | *28*~~27~~ |
| 2. | *Feasibility* ................................................................................................................. | *28* |
| 3. | *Acceptance by Impaired Classes* ................................................................................ | *29*~~28~~ |
| 4. | *Confirmation Without Acceptance by All Impaired Classes* .......................................... | *29* |
| 5. | *No Unfair Discrimination* ........................................................................................... | *29* |
| 6. | *Fair and Equitable Test* .............................................................................................. | *30*~~29~~ |
| D. | **CONSUMMATION OF THE PLAN** ................................................................................... | 30 |
| **V. PLAN-RELATED RISK FACTORS** ...................................................................................... | **31**~~30~~ |
| A. | **CERTAIN BANKRUPTCY LAW CONSIDERATIONS** .............................................................. | **31**~~30~~ |
| 1. | *Parties in Interest May Object to the Debtor's Classification of Claims and Equity Interests* ........... | *31*~~30~~ |
| 2. | *The Debtor May Fail to Satisfy the Vote Requirement* .................................................. | *31*~~30~~ |
| 3. | *The Debtor May Not Be Able to Secure Confirmation of the Plan* .................................. | *31*~~30~~ |
| 4. | *Nonconsensual Confirmation of the Plan May be Necessary* ........................................ | *32*~~31~~ |
| 5. | *The Debtor May Object to the Amount or Classification of a Claim* ............................... | *32*~~31~~ |
| 6. | *Risk of Non-Occurrence of the Effective Date* ............................................................. | *32*~~31~~ |
| 7. | *Contingencies Will Not Affect Votes of Impaired Classes to Accept or Reject the Plan* .................... | *32*~~31~~ |
| B. | **RISK FACTORS THAT MAY AFFECT RECOVERIES UNDER THE PLAN** .................................... | 32 |
| 1. | *The Valuation of the Reorganized Debtor May Not Be Adopted by the Bankruptcy Court* ................... | *32* |
| 2. | *The Reorganized Debtor May Not Be Able to Close Its Asset Sale* ............... *Error! Bookmark not defined.* |

4832-0867-9498, v. 1

**C.    RISK FACTORS THAT COULD NEGATIVELY IMPACT THE DEBTOR'S BUSINESS**..............................................3332

    *1.    Prolonged Continuation of the Chapter 11 Case is Likely to Harm the Debtor's Asset Values* ............3332

    *2.    Certain Tax Implications of the Debtor's Bankruptcy and Reorganization May Increase the Tax Liability of the Reorganized Debtor*..............................................................................................................33

**D.    RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS** ..........................................................33

    *1.    The Financial Information Contained Herein is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed*..............................................................................33

    *2.    Financial Projections and Other Forward Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a result, Actual Results May Vary* ......................................................................................................33

**E.    DISCLOSURE STATEMENT DISCLAIMERS**................................................................................3433

    *1.    The Information Contained Herein Is for Soliciting Votes Only*..........................................3433

    *2.    This Disclosure Statement Was Not Approved by the Securities and Exchange Commission*............3433

    *3.    The Disclosure Statement Contains Forward Looking Statements* ..........................................34

    *4.    No Legal or Tax Advice is Provided to You by this Disclosure Statement* ..................................34

    *5.    No Admissions Are Made by this Disclosure Statement*....................................................3534

    *6.    No Reliance Should be Placed on any Failure to Identify Litigation Claims or Projected Objections* .3534

    *7.    Nothing Herein Constitutes a Waiver of any Rights to Object to Claims or Recover Transfers and Assets* 3534

    *8.    The Information Used Herein Was Provided to the Debtor and Was Relied Upon by the Debtor's Advisors* ..............................................................................................................3534

    *9.    The Potential Exists for Inaccuracies, and the Debtor has no Duty to Update* ......................3534

    *10.    No Representations Made Outside of the Disclosure Statement Are Authorized*..............................35

**VI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**..........................................35

**A.    LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE** ............................................................35

**B.    FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION**..................................................................3635

**VII.    RETENTION OF JURISDICTION** ..................................................................................3635

**VIII.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** ..................................................37

A.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ........................................................37

**B.    IN GENERAL** ..............................................................................................................3837

**C.    U.S. HOLDERS OF CLAIMS** ..........................................................................................3938

**D.    NON-U.S. HOLDERS OF CLAIMS** ..................................................................................3938

**E.    IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE** ........................................................3938

**IX. GLOSSARY OF DEFINED TERMS**..................................................................................39

**X.    RECOMMENDATION** ..............................................................................................4544

4832-0867-9498, v. 1

## I.    BACKGROUND TO THE CHAPTER 11 CASE

### A.  THE DEBTOR'S HISTORY[1]

The Debtor began its business in 2005 by providing electrician repair services to the public in Southern Nevada.  By 2010, the Debtor expanded its business into the solar industry and began providing solar energy servies, including the assessment and installation of solar panels to residential and commercial customers in Southern Nevada.  By 2015, the Debtor had expanded its solar energy business to Arizona and California.

The Debtor has an ongoing business relationship with SunPower, which manufactures residential solar panels, and the Debtor, in turn, originates and installs solar panels, which are leased to SunPower's customers and owned by SunPower.  The Debtor also provides installation design and the physical installation of SunPower solar panels, in return for which SunPower pays the Debtor fees as specifically described in contracts between SunPower and the Debtor.

In late 2015, the Debtor's solar energy business, as well as the solar energy industry in Nevada, was hard hit due to the changes in the way the State of Nevada decided to support solar power.  Specifically, in December 2015, Nevada's Public Utilities Commission voted to phase out incentives for homeowners who install rooftop solar panels.  The effect of these changes, which reduced: (a) subsidies for homeowners to purchase or lease solar panels, and (b) the ability of homeowners to sell excess power to NV Energy (known as "net metering"), caused much of the solar industry to abandon Nevada as a market.  Indeed, the 3 largest operators in the state, Solar City, Sun Run and Vivint Solar all left the state, and Summerlin Energy, LLC liquidated in the United States Bankruptcy Court for the District of Nevada.

Nevertheless, it is the Debtor's view that some companies will be left standing in Nevada to both install new solar panels for homeowners, and service the existing solar panel industry.  Indeed, the Debtor believes that it is that vendor.  Accordingly, in light of the wreckage seen across the solar industry in Nevada, the Debtor believed it could continue to operate its business and serve the needs of its customers in Nevada, Arizona and California.

In early 2016, the Debtor's revenues did not enable it to pay all of its debts as they became due, and as a result, the Debtor's revenue issues caused the Debtor to obtain high interest business loans.  These high interest loan payments, however, did not allow the Debtor to make both its business loan payments and its ongoing business operating expenses.  Importantly, in early August 2016, one of the Debtor's high interest lenders, Pearl Gamma Funding, LLC, called a default against the Debtor and froze the Debtor's cash and bank accounts.  As a result, the Debtor had no choice but to commence its Chapter 11 case.

### B.  EVENTS LEADING TO THE CHAPTER 11 FILING

As a result of the foregoing, on August 12, 2016, (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

## II.    EVENTS DURING THE CHAPTER 11 CASE

### A.    FIRST DAY MOTIONS AND CERTAIN RELATED RELIEF

On or around the Petition Date, in addition to filing its voluntary petition for relief, the Debtor also filed various motions (collectively, the "**First Day Motions**") with the Bankruptcy Court.  The Debtor filed several motions to, among other things, (i) prevent interruptions to the Debtor's business, (ii) ease the strain on the Debtor's relationships with certain essential constituents, such as utility providers, (iii) gain the consensual use of the company's cash collateral with its business lenders, (iv) pay certain critical vendors essential to the Debtor's

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meanings set forth in Article X herein, titled "Glossary of Key Terms."  To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the "Glossary of Key Terms" is inconsistent, the definition in the "Glossary of Key Terms" shall control.

business, and (v) allow the Debtor to retain bankruptcy counsel to assist it with the administration of the Chapter 11 Case (each, a **"First Day Motion"**).

### 1.    Employment of Professionals

To assist the Debtor in carrying out its duties as debtor in possession and to represent its interests in the Chapter 11 Case, the Debtor filed an application to hire Schwartz Flansburg PLLC as the Debtor's bankruptcy counsel.  On October 4, 2016, the Bankruptcy Court entered an order authorizing the retention and employment of Schwartz Flansburg PLLC as the Debtor's bankruptcy counsel.

The Debtor also filed an application to employ and retain Branson Management Group, Inc., as its bookkeeper, in order to assist the Debtor with its bookkeeping and financial records pertaining to its business and its reporting obligations to the Bankruptcy Court.  On December 7, 2016, the Bankruptcy Court entered an order authorizing the retention and employment of Branson Management Group, Inc. as bookkeepers for the Debtor.

Finally, the Debtor filed an application to employ and retain Peel Brimley LLP as special litigation counsel for the Debtor.  Prior to the Petition Date, the Debtor had retained Peel Brimley LLP to prosecute and enforce its mechanics lien actions against customers who failed to pay for the installation of solar panels on their properties.  As the Debtor has a continuing need to prosecute its mechanics lien actions, it sought the employment of Peel Brimley LLP.  On December 7, 2016, the Bankruptcy Court entered an order authorizing the retention and employment of Peel Brimley LLP as special litigation counsel for the Debtor.

### 2.    Stabilizing Operations

Recognizing that any interruption of the Debtor's business, even for a brief time, would negatively impact its operations, revenues and profits, the Debtor filed the following First Day Motions and the Bankruptcy Court entered corresponding First Day Orders on August 15, 2016 to: (i) determine adequate assurance for future utility service and establish procedures for utility providers to object to such assurance; (ii) maintain bank accounts and cash management system; and (iii) obtain Bankruptcy Court authority to use cash collateral; and (iv) obtain Bankruptcy Court authority to pay certain critical vendors.

### B.    OTHER EVENTS DURING THE CHAPTER 11 CASE

1.    Filing of the Schedules

As the Debtor filed its Chapter 11 case on an emergency basis, it needed additional time to file its schedules and statements with the Bankruptcy Court.  On September 7, 2016, the Debtor filed its Schedules with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code.

2.    Establishment of the Claims Bar Date

On August 12, 2016, the Bankruptcy Court issued the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines, establishing December 14, 2016, as the Claims Bar Date for filing proofs of claim and requests for payment of administrative claims under section 503(b)(9) of the Bankruptcy Code and establishing February 8, 2017 as the Governmental Bar Date [Docket No.  4].

3.    Credit Card Processing Issues

In May 2017, the Debtor began experiencing issues with its credit card processor, Elavon, Inc. ("**Elavon**"). Specifically, in early May 2017, Elavon held nearly $100,000 in funds due and owing to the Debtor.  Elavon claims it held these funds to establish a reserve account to protect itself against risk of refunds and chargebacks.  The Debtor assets these funds are due and owing to the Debtor and filed a motion for turnover.

Currently, the parties continue to work to resolve their dispute and to work out a reasonable solution to allow the Debtor to continue using Elavon's services as a credit card processor.  The Debtor is also evaluating its alternatives with other credit card processing companies.

4.      Stipulation with SunPower.

On June 6, 2017, the Debtor and SunPower entered into the SunPower Stipulation which resolved the claims between the parties, provided for the Debtor and SunPower to continue working together, including the Debtor's sale of SunPower's solar panels and services.  In addition, the SunPower Stipulation provided the Debtor with much needed working capital in the form of a $200,000.00 credit line, and paved the way for the Debtor to reorganize.  The SunPower Stipulation also included the assumption of SunPower's executory contracts with the Debtor in accordance with Section 365 of the Bankruptcy Code.

The Debtor also agreed to release and waive all claims against SunPower, and SunPower shall have an Allowed Claim in the amount of $560,365.45 (exclusive of contingent, unliquidated claims), without the need to amend SunPower's proof of claim filed in the Debtor's case.  Finally, the SunPower Stipulation provided for the repayment of SunPower in monthly installments due on the first day of each month, commencing June 1, 2017, as follows:

| Date | Amount |
|------|--------|
| June 2017 | $30,000.00 |
| July 2017 | $37,500.00 |
| August 2017 | $45,000.00 |
| September 2017 | $90,000.00 |
| October 2017 | $90,000.00 |
| November 2017 | $65,000.00 |
| December 2017 | $42,500.00 |
| January 2018 | $42,500.00 |
| February 2018 | $52,500.00 |
| March 2018 | $65,500.00 |
| **Total** | **$560,500.00** |

The payments listed above are all "cure" costs to be paid by the Debtor to SunPower.  Specifically, the Debtor provides customer service, installation design and physical installation of SunPower solar panels, in return for which SunPower pays the Debtor fees as described in the executory contracts.  The Debtor also purchases SunPower solar panels for the Debtor's own account.  Pursuant to the executory contracts, however, the Debtor is required to pay SunPower any outstanding amounts due for solar panels prior to SunPower paying the Debtor fees for services.  Accordingly, the SunPower Stipulation allows the Debtor to spread out its "cure costs" over 10 months, while also allowing the Debtor to continue to provide services to SunPower and receive fees for the work performed.

**REORGANIZATION STRATEGY**

The Debtor focused on developing and executing a reorganization strategy to: (a) maximize the value of its Estate; (b) address the factors that led to the bankruptcy filing; and (c) enable the Debtor to emerge from chapter 11 as a stronger, more viable company.

**III.     SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

THIS SECTION III IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE **MATERIAL TERMS** OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN, AND SHOULD **NOT** BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES BETWEEN THIS SECTION III AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL GOVERN.

4832-0867-9498, v. 1

**Purpose of the Plan of Reorganization**

As required by the Bankruptcy Code, the Plan, a copy of which is attached hereto as **Exhibit A**, places Claims in separate Classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**Unclassified Claims**

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and Holders of such Claims do not vote on the Plan. They may, however, object if, in such Claim Holder's view, the treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Debtor did *not* place the following Claims in any Class:

**Administrative Claims**

Administrative Claims are Claims for the costs or expenses of administering the Debtor's Chapter 11 Case which are Allowed under section 507(a)(2) of the Bankruptcy Code. Administrative Claims also include the expenses for the value of any goods or services sold to the Debtor in the ordinary course of business. The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The Debtor expects to pay its administrative claims from its cash on hand on the Effective Date of the Plan.

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|------|------------------------|--------------------|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Current as of the date of filing of the Disclosure Statement. | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the court | $100,000.00 | Paid in full on the Effective Date of the Plan, according to separate written agreement, or according to court order if such fees have not been approved by the Bankruptcy Court on the Effective Date of the Plan. |
| United States Trustee's Fees | $10,000.00 | Paid in full on the Effective Date of the Plan. |
| **TOTAL** | $110,000.00 | |

**Priority Tax Claims**

Priority Tax Claims are unsecured income, employment and other taxes described by section 507(a)(8) of the Bankruptcy Code. Unless the Holder of such a section 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the Petition Date. In this case, the Internal Revenue Service (the "**IRS**") filed a proof of claim (Claim No. 38) against the Debtor for $321,144.61, all amount of which were estimated by the IRS for unfiled income and employment tax returns for 2015 and 2016. The Debtor is currently working to resolve this issue with the IRS and file the outstanding returns. The Debtor anticipates reducing the claims of the IRS in full upon the filing of the missing returns. The California Franchise Tax Board also filed a proof of claim in the Debtor's case (Claim No. 20) in the amount of $1,697.79. The Nevada Department of Taxation also filed a proof of claim in the Debtor's case (Claim No. 37) in the amount of $26,713.83.

11

**Secured Claims**

Classes 1 through 3 shall consist of the Secured Claims of the Debtor's business lenders, all of which claims are secured by the assets of the Debtor. Class 1 shall consist of the Secured Claim of Strategic Funding Source, Inc. ("**Strategic**"), which shall be impaired, and paid the full amount of its allowed claim in equal quarterly installments over a period of 60 months. The amount of the Class 1 claim of Strategic is approximately $693,131.00.

Class 2 shall consist of the Secured Claim of SBF Finance and Technology, LLC ("**SBF**"), which shall be impaired, and paid the full amount of its allowed claim in equal quarterly installments over a period of 60 months. The amount of the Class 2 claim of SBF is approximately $26,287.26.

Class 3 shall consist of the Secured Claim of Pearl Beta Funding, LLC ("**Pearl**"), which shall be impaired, and paid the full amount of its allowed claim in equal quarterly installments over a period of 60 months. The amount of the Class 3 claim of Pearl is approximately $111,680.00.

Class 4 shall consist of the secured claim of Wells Fargo Equipment Finance, which shall be impaired, and paid the full amount of its allowed claim in accordance with the terms of its related security agreement. The amount of the Class 4 claim of Wells Fargo Equipment Finance is approximately $6,911.73.

Class 5 shall consist of several Secured Claims of Ally Bank, Toyota Financial Services, and JP Morgan Chase Bank, each of whom hold secured claims against the Debtor's vehicles. Class 5 is divided into sub classes for each vehicle of the Debtor which is secured by a lien. Each Class 5 claim shall be impaired, and paid in full in accordance with the terms of its related security agreement.

Class 6 shall consist of the Secured Claim of Soligent Distribution, LLC ("**Soligent**"), which shall be impaired, and paid the full amount of its allowed claim in equal quarterly installments over a period of 60 months. The amount of the Class 6 claim of Soligent is approximately $19,003.87.

Class 7 shall consist of the Secured Claim under Section 553 of the Bankruptcy Code of SunPower in the Allowed Amount of $560,365.45, which shall be impaired, and paid the full amount of that Allowed Claim in monthly installments between June 2017 and March 2018, as set forth in SunPower Stipulation.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| Class 1 | Secured Claim of Strategic Funding Source, Inc. | Impaired | Paid in full in equal quarterly installments over a period of 60 months, in the approximate amount of $693,131.00. |
| Class 2 | Secured Claim of SBF Finance Technology, LLC | Impaired | Paid in full in equal quarterly installments over a period of 60 months, in the approximate amount of $26,287.26. |
| Class 3 | Secured Claim of Pearl Beta Funding, LLC | Impaired | Paid in full in equal quarterly installments over a period of 60 months, in the approximate amount of $111,680.00. |
| Class 4 | Secured Claim of Wells Fargo Equipment Finance | Impaired | Pain in full in accordance with the terms of its related security agreement. |
| Class 5(a) | Secured Claim of Ally Bank against 2015 | Impaired | Paid in full in accordance with the terms of its related security |

4832-0867-9498, v. 1

| | Chevrolet City Express Van: VIN xxxx1310 | | agreement. |
|---|---|---|---|
| Class 5(b) | Secured Claim of Ally Bank against 2012 Chevrolet City Express Van: VIN xxxx1803 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(c) | Secured Claim of Ally Bank against 2014 Chevrolet Silverado: VIN xxxx6265 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(d) | Secured Claim of Ally Bank against 2014 Chevrolet City Express Van: VIN xxxx8740 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(e) | Secured Claim of Ally Bank against 2014 Chevrolet City Express Van: VIN xxxx0329 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(f) | Secured Claim of Ally Bank against 2014 Chevrolet City Express Van: VIN xxxx5813 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(g) | Secured Claim of Ally Bank against 2014 Chevrolet City Express Van: VIN xxxx7675 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(h) | Secured Claim of Ally Bank against 2015 Chevrolet Spark: VIN xxxx5835 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(i) | Secured Claim of Ally Bank against 2014 Chevrolet City Express Van: VIN xxxx3492 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(j) | Secured Claim of Ally Bank against 2014 Chevrolet Volt: VIN xxxx4831 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(k) | Secured Claim of Ally Bank against 2014 Chevrolet Silverado: VIN xxxx7127 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(l) | Secured Claim of Ally Bank against 2014 Chevrolet Volt: VIN xxxx4217 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(m) | Secured Claim of Ally Bank against 2013 Chevrolet City Express Van: VIN xxxx3677 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(n) | Secured Claim of Ally Bank against 2015 Chevrolet City Express Van: VIN xxxx4906 | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(o) | Secured Claim of Ally | Impaired | Paid in full in accordance with the |

| | | | |
|---|---|---|---|
| | Bank against 2015 Chevrolet City Express Van: VIN xxxx4950 | | terms of its related security agreement. |
| Class 5(p) | Secured Claim of JP Morgan Chase Bank against 2015 Tesla 85D | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 5(q) | Secured Claim of Toyota Financial Services against 2014 Toyota Prius | Impaired | Paid in full in accordance with the terms of its related security agreement. |
| Class 6 | Secured Claim of Soligent Distribution, LLC | Impaired | Paid in full in equal quarterly installments over a period of 60 months in the approximate amount of $19,003.87. |
| Class 7 | Secured Claim of SunPower | Impaired | Paid in full in monthly installments paid from June 2017 through March 2018 as set forth in the SunPower Stipulation. |

**General Unsecured Claims**

Class 8 shall consist of General Unsecured Claims, which are not secured by property of the Estate and are not entitled to priority under section 507(a) of the Bankruptcy Code, but are entitled in this case to separate classification in accordance with Section 1122(b) of the Bankruptcy Code. The Debtor estimates that the amount of the General Unsecured Claims is approximately $950,000.00.

General Unsecured Claims shall be paid approximately 5% to 3740% of their Allowed claims over of the first 60 months of the Plan (or 5 years from the Effective Date), after payment of all secured, administrative and priority claims. Specifically, the Debtor anticipates paying $200,000 to $350,000380,000 to unsecured creditors over the life of the Plan, which includes the Debtor's Equity Contribution. The availability of these funds to unsecured creditors is based on the assumptions that: (i) the IRS claims will be reduced to zero; and (ii) administrative claims will be paid from the Debtor's cash on hand on the Effective Date of the Plan.

Specifically, in accordance with the Debtor's annual cash flow projections, attached hereto as **Exhibit B**, the Debtor anticipates generating approximately $29,000.00 per month in net profit over the next 5 years, which is $348,000 per year, or a total of $1,740,000 over 5 years. Pursuant to the table below, the Debtor needs $1,410,602.13 to make payments to other creditors[2] in the Plan. The Debtor anticipates this difference, or 329,398.00 ($1,740,000 less $1,410,602) will be available to pay unsecured creditors. When this amount, or approximately $330,000, is added to the proposed Equity Contribution of $50,000.00, general unsecured creditors may receive up to a total of $380,000 under the Plan, or approximately 40% of their allowed claims.

| **Creditor** | **Total Amount to be Paid under the Plan** |
|---|---|
| Strategic Funding Source, Inc. | $693,131.00 |
| SBF Finance and Technology, LLC | $26,287.26 |
| Pearl Beta Funding, LLC | $111,680.00 |
| Soligent Distribution, LLC | $19,003.87 |
| SunPower | $560,500.00 |
| **Total:** | **$1,410,602.13** |

---

[2] Payments for the Debtor's equipment lease in Class 4 and vehicles in Class 5 are already included as ongoing operating and vehicle expenses in the cash flow projections attached hereto as **Exhibit B**.

IMPORTANTLY, IF THE DEBTOR IS UNABLE TO REDUCE ITS IRS TAX LIABILITIES AS IT ANTICIPATES, THE DISTRIBUTION TO GENERAL UNSECURED CREDITORS MAY BE SUBSTANTIALLY REDUCED. IF THE DEBTOR IS UNABLE TO REDUCE ITS IRS LIABILITIES, GENERAL UNSECURED CREDITORS MAY ONLY RECEIVE THE EQUITY CONTRIBUTION.

The following chart identifies the Plan's proposed treatment of Class 8, which contain the unsecured claims against the Debtor.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| Class 8 | General Unsecured Claims | Impaired | Allowed General Unsecured Creditors shall receive approximately 5% to ~~37~~40% of their Allowed claims, over a period of 60 months, after payment of all secured, administrative and priority claims of the Debtor. |

The Debtor's ability to make payments to all secured, administrative, priority and unsecured claims is based on its excess income set forth in its budget attached hereto as **Exhibit B**. The budget is a good faith estimate of the Debtor's projected income and expenses on an annual basis over the next 5 years. The budget is based on several factors, including the Debtor's cash collateral budget (Docket No. 7, p. 19), the monthly operating reports filed in its Chapter 11 case, and its efforts to reduce expenses and increase revenue throughout its Chapter 11 case. Specifically, pursuant to the Debtor's last 4 monthly operating reports filed in the Chapter 11 case for January 2017 through April 2017 (Docket Nos. 173, 195-197), the average monthly net income is $29,425.00. Accordingly, the budget attached as **Exhibit B** estimates the Debtor to continue along this trend by estimating a net profit of $29,000 per month.

**Equity Interest of the Debtor**

Equity Interest Holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor and are classified here in Class 9. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company, the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the debtor is the equity interest holder.

In this Chapter 11 Case, the Debtor is a corporation. Upon the Effective Date of the Plan, all equity interests in the Debtor will be retained by the Debtor's equity interest holder, Jason Vita.

Subject to any interested party's right to overbid for the New Equity Interests, Mr. Vita will receive the New Equity Interests in the Debtor in exchange for: (i) contributions to the Debtor's estate to fund the Plan and the Debtor's business operations, namely, Mr. Vita will contribute $50,000.00 to the Debtor (the "**Equity Contribution**" or "**New Value**"). In exchange for the Equity Contribution, Mr. Vita shall retain the New Equity Interests in the Reorganized Debtor.

In order for the Debtor's Equity Interest Holders to comply with the Bankruptcy Code and Ninth Circuit Court of Appeal case law, the Equity Contribution must be: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value of interest received.

Here, the Equity Contribution satisfies these requirements because the Equity Contribution to be submitted: (1) constitutes new contributions; (2) is substantial is so much as it is necessary to make confirmation feasible; (3) is money or money's worth; (4) is necessary for a successful reorganization; and (5) is equal to or greater than the value to be received.

Here, the Equity Contribution satisfies these requirements because the Equity Contribution to be submitted: (1) constitutes new contributions; (2) is substantial in so much as it is necessary to make confirmation feasible; (3) is money or money's worth; (4) is necessary for a successful reorganization; and (5) is equal to or greater than the value to be received.

### A.    MEANS FOR IMPLEMENTATION OF THE PLAN

### 1.       General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, distributions, releases and other benefits provided under the Plan, and as a result of arm's-length negotiations among the Debtor and its creditors, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan, which includes the Bankruptcy Court's approval of the SunPower Stipulation in accordance with Sections 365 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  To the extent necessary, the Plan shall be deemed a motion to approve the SunPower Stipulation.

### 2.       Restructuring Transactions

As its principal Restructuring Transaction, the Debtor or Reorganized Debtor, as appropriate, shall issue the New Equity Interests Mr. Vita in exchange for the Equity Contribution.

The Restructuring Transactions may include one or more sales, mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the secured claim holders to be necessary or appropriate to fully effectuate the transfer of the New Equity Interests.  The actions to effect the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of sale, merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transactions and that satisfy the applicable requirements of applicable state and federal law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions, and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state or federal law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state or federal law in connection with the Restructuring Transactions.  In the event a Restructuring Transaction is a merger transaction, upon the consummation of such Restructuring Transaction, each party to such merger shall cease to exist as a separate corporate entity and thereafter the surviving Reorganized Debtor shall assume and perform the obligations of each Reorganized Debtor under this Plan.  In the event a Reorganized Debtor is liquidated, the Reorganized Debtor shall assume and perform such obligations.  Implementation of the Restructuring Transactions shall not affect the distributions under the Plan.

To the extent that any such Restructuring Transactions result in the assignment of any Executory Contract or Unexpired Lease assumed under the Plan to a party other than the Debtor which was originally a party to such Executory Contract or Unexpired Lease (including such Debtor as Reorganized Debtor), the Debtors shall follow the procedures in Article VI of the Plan for the assignment of such Executory Contracts and Unexpired Leases under section 365 of the Bankruptcy Code.  The chairman of the board of directors, president, chief executive officer, chief financial officer, any executive vice-president or senior vice-president, member or manager or any other appropriate officer of each Debtor, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan and the Restructuring Transactions.  The secretary or assistant secretary of the appropriate Debtor and of a Reorganized Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date, and pursuant to the Plan, the Debtor and the Reorganized Debtor, as applicable, shall take any actions as may be necessary or appropriate to affect a restructuring of their businesses or

the overall organizational structure of the Reorganized Debtor.  As of the date hereof, the actions to effect the Restructuring Transactions may include:

- the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree;
- the filing of appropriate certificates or articles of formation, reformation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and
- all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.

### 3.    New Corporate Existence

The Debtor shall continue to exist after the Effective Date as a separate corporate entity or limited liability company, as applicable, with all the powers of a corporation or limited liability company pursuant to laws of the State of Nevada and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, in such a manner as to preserve the Debtor's net operating losses for Federal tax purposes, except to the extent such certificate of incorporation or bylaws (or other formation documents) are amended by or in connection with the Plan or otherwise and, to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.

### 4.    Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan, in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estate (including, without limitation, Causes of Action) and any property acquired by the Debtor pursuant to the Plan, shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges or other encumbrances.  Except as may be provided in the Plan and any sale all or a portion of the Debtor's Assets, on and after the Effective Date, the Reorganized Debtor may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor shall pay the charges that they incur after the Effective Date for Retained Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Retained Professional fee applications) without application to the Bankruptcy Court.

### 5.    New Equity Interests

On the Effective Date, the Reorganized Debtor shall issue the New Equity Interests to Mr. Vita pursuant to the terms set forth in the Plan.  The New Equity Interests shall represent all of the Equity Interests in the Reorganized Debtor as of the Effective Date.  The New Equity Interests to be issued to the Mr. Vita and will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.  The issuance of the New Equity Interests shall be subject to competitive bidding, should any party other than Mr. Vita elect to pursue the purchase of the New Equity Interests.

### 6.    Securities Registration Exemption and Registration Rights Agreement

The New Equity Interests to be issued pursuant to the Plan will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

## B.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    Assumption and Rejection of Executory Contracts and Unexpired Leases

(a)    Assumption of Executory Contracts and Unexpired Leases

Subject to the right of the Reorganized Debtor to elect to reject any Executory Contract or Unexpired Lease as to which there is an objection to the proposed cure, each Executory Contract or Unexpired Lease shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:

- has been previously assumed by the Debtor by Final Order of the Bankruptcy Court;

- has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date, , which includes the Bankruptcy Court's approval of the SunPower Stipulation;

- is the subject of a motion to reject pending as of the Effective Date;

- is listed on the schedule of "Assumed Contracts and Unexpired Leases" in the Plan Supplement; or

- is otherwise assumed pursuant to the Plan.

Pursuant to the terms of the SunPower Stipulation, the Debtor assumes all executory contracts with SunPower and is authorized to perform its obligations under all pre-petition and post-petition executory contracts with SunPower. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. The Debtor reserves the right to amend the schedule of Assumed Executory Contracts and Unexpired Leases at any time before the Effective Date.

(b)    Approval of Assumptions

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption of such Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall be terminated.

(c)    Assignment of Executory Contracts or Unexpired Leases

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption and assignment, which will: (i) list the applicable cure amount, if any; (ii) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (iii) describe the procedures for filing objections thereto; and (iv) explain the process by which related disputes will be resolved by the Bankruptcy Court. Any applicable cure amounts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Notwithstanding anything to the contrary herein, the Debtor will not assign any executory contracts with SunPower.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be filed, served and actually received by the Debtor at least five (5) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the

Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor, in its sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

### 2.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtor or the Reorganized Debtor or their Estates and property, and the Debtor or the Reorganized Debtor and their Estates and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.

### 3.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  At least ten (10) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will:  (a) list the applicable cure amount, if any; (b) describe the procedures for filing objections thereto; and (c) explain the process by which related disputes will be resolved by the Bankruptcy Court.  Notwithstanding anything to the contrary herein, the Debtor shall cure its obligations under its executory contracts with SunPower pursuant to the terms of the SunPower Stipulation.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtor at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code, shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  If an objection to a Cure Claim is sustained by the Bankruptcy Court, the Reorganized Debtor, in its sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

### 4.    Contracts and Leases Entered into After the Petition Date

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.  Notwithstanding anything to the contrary herein, the treatment of the Debtor's executory contracts with SunPower shall be in accordance with the terms of the SunPower Stipulation.

### C.    PROVISIONS GOVERNING DISTRIBUTIONS

4832-0867-9498, v. 1

1.      **Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Reorganized Debtor shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date; provided, however, that payments on account of General Unsecured Claims that become Allowed Claims on or before the Effective Date shall commence on the Effective Date.

2.      **Distributions on Account of Claims Allowed After the Effective Date**

(a)      Rejection of Executory Contracts or Unexpired Leases

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

(b)      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall establish appropriate reserves for potential payment of such Claims pursuant to Article VIII of the Plan.

3.      **Delivery and Distributions and Undeliverable or Unclaimed Distributions**

(a)      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)      Special Rules for Distributions to Holders of Disputed Claims

Except as otherwise provided in the Plan, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtor or the Reorganized Debtor, as applicable; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

(c)      Distributions by Distribution Agent

The Debtor or the Reorganized Debtor, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required under the Plan. As a condition to serving as a Distribution Agent, a Distribution Agent must (i) affirm its obligation to facilitate the prompt distribution of any documents, (ii) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan and (iii) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan that are to be distributed by such Distribution Agent.

The Debtor or the Reorganized Debtor, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents.  The Distribution Agents shall submit detailed invoices to the Debtor or Reorganized Debtor, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtor shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtor deems to be unreasonable.  In the event that the Debtor objects to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtor or the Reorganized Debtor, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Debtor or the Reorganized Debtor, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

(d)    <u>Minimum Distributions</u>

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall not be required to make distributions or payments of less than $10.00 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars.  Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (i) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has an economic value less than **$5,000.00**, unless such distribution is a final distribution; or (ii) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $10.00, which shall be treated as an undeliverable distribution under Article VII.C. of the Plan.

(e)    <u>Undeliverable Distributions</u>

<u>Holding of Certain Undeliverable Distributions</u>.  If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor (or the Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor (or the Distribution Agent) is notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtor, subject to Article VII.C. of the Plan, until such time as any such distributions become deliverable.  Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

<u>Failure to Claim Undeliverable Distributions</u>.  No later than 210days after the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions.  This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stays open.  Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtor of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim, shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property.  In such cases, (i) any Cash or Equity Interest held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto.  Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

<u>Failure to Present Checks</u>.  Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check.  In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such

checks, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stays open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

### 4.    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

### 5.    Timing and Calculation of Amounts to be Distributed

On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class; provided, however, that distributions on account of General Unsecured Claims that become Allowed Claims before the Effective Date shall be paid on the Effective Date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in Article VI of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### 6.    Setoffs

Except for the Allowed Claim of SunPower, the Debtor and the Reorganized Debtor may withhold (but not setoff except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided in the Plan.

**D.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

**1.    Resolution of Disputed Claims**

(a)    Allowance of Claims

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.  All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties, including the Baron Settlement.

(b)    Prosecution of Objection to Claims

After the Confirmation Date but before the Effective Date, the Debtor, and after the Effective Date until the Claims Objection Bar Date, the Reorganized Debtor shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, except for Allowed Claims, regardless of whether such Claims are in a Class or otherwise.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court. With respect to all Tort Claims, an objection is deemed to have been Filed timely, thus making each such Claim a Disputed Claim as of the Claims Objection Bar Date.  Each such Tort Claim shall remain a Disputed Claim unless and until it becomes an Allowed Claim.

(c)    Claims Estimation

After the Confirmation Date, but before the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate (i) any Disputed Claim pursuant to applicable law and (ii) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

Notwithstanding anything in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

(d)    Expungement or Adjustment of Claims

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

(e)    Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date

23

### 2.      Disallowance of Claims

All Claims of any Entity from which property is sought by the Debtor or the Reorganized Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (a) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (A) THE CONFIRMATION HEARING AND (B) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

### 3.      Amendment to Claims

On or after the Effective Date, except as otherwise provided in the Plan, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

## E.      CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### 1.      Conditions Precedent to Confirmation

It shall be a condition to Confirmation of the Plan that all provisions, terms and conditions set forth in the Plan are approved in the Confirmation Order.

### 2.      Conditions Precedent to Consummation

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX of the Plan:

- The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtor.

- The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor.  The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

- ~~The Bankruptcy Court shall have entered an order authorizing the sale of the Sale Property, and the Winning Bidder shall have closed on its acquisition of the Sale Property.~~

- All documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been affected or executed.  All conditions precedent all to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or

4832-0867-9498, v. 1

agreements.

- All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

### 3.  Waiver of Conditions

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in Article VIII of the Plan may be waived by the Debtor without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

### 4.  Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

### F.    SETTLEMENT, RELEASE AND RELATED PROVISIONS

### 1.  Compromise and Settlement

Notwithstanding anything in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan takes into account and conforms to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant to the Plan. The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan, including the SunPower Stipulation, are:  (a) in the best interests of the Debtor, its estates and all Holders of Claims; (b) fair, equitable and reasonable; (c) made in good faith; and (d) approved by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019.

In accordance with the provisions of the Plan and pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (a) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Claims against it and (b) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities.

### 2.  Preservation of Rights of Action

(a)    Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case.  Notwithstanding anything to the contrary herein, the Debtor has resolved any claims against SunPower pursuant to the terms of the SunPower Stipulation.

(b)    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtor expressly reserves such claim or Cause of Action for later

adjudication by the Debtor or the Reorganized Debtor (including, without limitation, claims and Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or codefendants in such lawsuits.  Notwithstanding anything to the contrary herein, the Debtor has resolved any claims against SunPower pursuant to the terms of the SunPower Stipulation.

       **G.**      **BINDING NATURE OF THE PLAN**

       THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

       **IV.**      **CONFIRMATION AND CONSUMMATION PROCEDURES**

       **A.**      **Solicitation of Votes**

       The process by which the Debtor will solicit votes to accept or reject the Plan is summarized in that certain Solicitation and Procedures Motion (the "**Procedures Motion**"), filed with the Court on _____.  On _____, 2017, this Court entered an order approving  the Procedures Motion (Docket No. ___).

       **PLEASE REFER TO THE PROCEDURES MOTION FOR MORE INFORMATION REGARDING VOTING REQUIREMENTS TO ENSURE THAT VOTES ARE PROPERLY AND TIMELY SUBMITTED SUCH THAT THEY ARE COUNTED AS VOTES TO ACCEPT OR REJECT THE PLAN.**

       **B.**      **Confirmation Procedures**

       **1.**      **Confirmation Hearing**

       **The Confirmation Hearing will commence at _____ prevailing Pacific Time on _____, 2017.**

       **The Plan Objection Deadline is 5:00 p.m., prevailing Pacific Time on _____, 2017.**

       All Plan objections must be filed with the Bankruptcy Court and served on the Debtor and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.

> THE BANKRUPTCY COURT WILL <u>NOT</u> CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.

       **2.**      **Confirmation Hearing Notice**

       Following the Disclosure Statement Hearing, the Debtor will serve the Confirmation Hearing Notice on all of the Debtor's creditors, parties in interest and parties which have requested notice pursuant to Bankruptcy Rule 2002, which will contain, among other things, the Plan Objection Deadline, the Voting Deadline and the date that the Confirmation Hearing is scheduled to commence.

       **3.**      **Filing Objections to the Plan**

All objections, if any, must (a) be made in writing, (b) conform to the Bankruptcy Rules and the Local Rules and (c) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that they are **actually received** on or before the Plan Objection Deadline by each of the parties listed in the table below:

| Name: | Contact Information: |
|---|---|
| Debtor's counsel | Schwartz Flansburg PLLC<br>Attn: Samuel A. Schwartz, Esq.<br>6623 Las Vegas Blvd. South, Suite 300<br>Las Vegas, Nevada 89119<br>Fax: (702) 385-2741 |

### C.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) it has complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Debtor believes that the Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment: (a) made before the Confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of an Impaired Claim has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on that date under chapter 7 of the Bankruptcy Code, including pursuant to section 1129(b) of the Bankruptcy Code for Equity Interests deemed to reject the Plan.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code for Equity Interests deemed to reject the Plan.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successors thereto under the Plan.

- The Debtor has paid the required filing fees pursuant to 28 U.S.C. § 1930 to the clerk of the Bankruptcy Court.

- In addition to the filing fees paid to the clerk of the Bankruptcy Court, the Debtor will pay quarterly fees no later than the last day of the calendar month, following the calendar quarter for which the fee is owed in the Debtor's Chapter 11 Case for each quarter (including any fraction thereof), to the Office of the U.S. Trustee, until the case is converted or dismissed, whichever occurs first.

### 1. Best Interests of Creditors Test/Liquidation Analysis

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor is liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the bankruptcy court must: (a) estimate the Cash liquidation proceeds that a chapter 7 trustee would generate if the debtor's Chapter 11 Case was converted to a chapter 7 case and the assets of such debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation distribution to the distribution under the plan that such holder would receive if the plan were confirmed. The Debtor's liquidation analysis is attached hereto as **Exhibit C**.

In chapter 7 cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

Accordingly, the Cash amount that would be available for satisfaction of Claims (other than Secured Claims) would consist of the proceeds resulting from the disposition of the unencumbered assets of the Debtor, augmented by the unencumbered Cash held by the Debtor at the time of the commencement of the liquidation. Such Cash would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from termination of the Debtor's business and the use of chapter 7 for purposes of a liquidation.

The Debtor believes that confirmation of the Plan will provide each Holder of an Allowed Claim in Class 1 with a greater recovery than the value of any distributions if the Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code because, among other reasons, the Debtor does not own any significant, tangible assets which could be liquidated. Specifically, the Debtor neither owns the Premises or the Leased Equipment. Instead, the Debtor is depending on the receipt of its Receivables to fund the Plan, and the receipt of such Receivables is dependent upon the continued existence of the Debtor's business. Additionally, in a chapter 7 liquidation, the Debtor would be subject to the fees and expenses of a chapter 7 trustee which would likely further reduce Cash available for distribution. In addition, distributions in chapter 7 cases may not occur for a longer period of time than distributions under the Plan, thereby reducing the present value of such distributions. In this regard, it is possible that distribution of the proceeds of a liquidation could be delayed for a significant period while the chapter 7 trustee and its advisors become knowledgeable about, among other things, the Chapter 11 Case and the Claims against the Debtor. As set forth in the Liquidation Analysis, Holders of Class 4 Equity Interests would not receive any recovery under a chapter 7 liquidation, so the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code with respect to such Classes.

### 2. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is

not likely to be followed by the liquidation of the Reorganized Debtor or the need for further financial reorganization, unless the Plan contemplates such liquidation.  For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtor has analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan and to retain sufficient liquidity and capital resources to conduct its business.

The Debtor believes that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, because the Debtor is selling substantially all of its Assets.  Therefore, confirmation is not likely to be followed by the need for further financial reorganization of the Debtor or any successor under the Plan.  In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtor analyzed its ability to satisfy its financial obligations while maintaining sufficient liquidity and capital resources.  The Debtor's proposed annual budget/financial projection for the next 5 years for its Plan is attached hereto as **Exhibit B**.

Accordingly, the Debtor believes that Confirmation and Consummation is, therefore, not likely to be followed by the liquidation or further reorganization of the Reorganized Debtor.  Accordingly, the Debtor believes that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

### 3.        Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.  A class is "impaired" unless the plan:  (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such obligation; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives Cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled to any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan.  Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.

Claims in Classes 1, 2, 3, 4, 5, 6, 7 and 6 8 are Impaired under the Plan, and as a result, the Holders of Claims in Classes 1 through 6 8 are entitled to vote on the Plan.  Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in the Voting Classes must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Classes, and without considering whether the Plan "discriminates unfairly" with respect to such Classes, as both standards are described herein.  As stated above, Classes of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of each such Class (other than any Claims of creditors designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### 4.        Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes entitled to vote on the plan have not accepted it, provided that the plan has been accepted by at least one impaired class.  Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

### 5.        No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different

treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### 6.    Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

- <u>Secured Claims</u>. The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (a) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (b) each holder of a secured claim in the class receives deferred Cash payments totaling at least the allowed amount of such claim with a present value, as of the effective date of the plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

- <u>Unsecured Claims</u>. The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the following requirement that either: (a) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

- <u>Equity Interests</u>. The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirements that either:

  - the plan provides that each holder of an equity interest in that class receives or retains under the plan on account of that equity interest property of a value, as of the effective date of the plan, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled; (b) any fixed redemption price to which such holder is entitled; or (c) the value of such interest; or

  - if the class does not receive the amount required in the paragraph directly above, no class of equity interests junior to the non-accepting class may receive a distribution under the plan.

**The Debtor anticipates that it will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code**. To the extent that any of the Voting Classes vote to reject the Plan, the Debtor, however, reserves the right to seek (a) Confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan in accordance with Article VIII.B. of the Plan.

The Debtor does not believe that the Plan discriminates unfairly against any Impaired Class of Claims or Equity Interests. The Debtor believes that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

### D.    CONSUMMATION OF THE PLAN

The Plan will be consummated on the Effective Date. For a more detailed discussion of the conditions precedent to consummation of the Plan and the impact of failure to meet such conditions, see Article VIII of the Plan.

# V.    PLAN-RELATED RISK FACTORS

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.    ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD <u>NOT</u> BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S BUSINESS OR THE PLAN AND ITS IMPLEMENTATION.

## A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS

### 1.    Parties in Interest May Object to the Debtor's Classification of Claims and Equity Interests.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.    The Debtor May Fail to Satisfy the Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Debtor may seek to accomplish an alternative chapter 11 plan.  There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

### 3.    The Debtor May Not Be Able to Secure Confirmation of the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, findings by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in Article VIII of the Plan.  If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims would receive with respect to their Allowed Claims.

The Debtor, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

### 4. Nonconsensual Confirmation of the Plan May be Necessary

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtor believes that the Plan satisfies these requirements and the Debtor may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.

### 5. The Debtor May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtor and Reorganized Debtor reserve the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

### 6. Risk of Non-Occurrence of the Effective Date

Although the Debtor believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### 7. Contingencies Will Not Affect Votes of Impaired Classes to Accept or Reject the Plan

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

### B. RISK FACTORS THAT MAY AFFECT RECOVERIES UNDER THE PLAN

### 1. The Valuation of the Reorganized Debtor May Not Be Adopted by the Bankruptcy Court

The approximate value of the Debtor is negative due to the Debtor's inability to collect fair value for its assets. Parties in interest in this Chapter 11 Case may oppose Confirmation of the Plan by alleging that the equity value of the Reorganized Debtor is higher than the amounts projected by the Debtor at confirmation and that the Plan thereby improperly limits or extinguishes their rights to recoveries under the Plan. At the Confirmation Hearing, the Bankruptcy Court will hear evidence regarding the views of the Debtor and opposing parties, if any, with respect to the valuation of the Reorganized Debtor. Based on that evidence, the Bankruptcy Court will determine the appropriate valuation for the Reorganized Debtor for purposes of the Plan.

### 2. The Reorganized Debtor May Not Be Able to Achieve Projected Financial Results or Finance All Operating Expenses, Working Capital Needs and Capital Expenditures

The Reorganized Debtor may not be able to meet its projected financial results or achieve projected revenues and Cash flows assumed in projecting future business performance. To the extent the Reorganized Debtor

4832-0867-9498, v. 1

does not meet its projected financial results or achieve projected revenues and Cash flows, the Reorganized Debtor may lack sufficient liquidity to continue operating as planned after the Effective Date, or may not be able to meet its operational needs. Any one of these failures may preclude the Reorganized Debtor from, among other things, maintaining and growing its business. Further, a failure of the Reorganized Debtor to meet its projected financial results or achieve projected revenues and Cash flows could lead to Cash flow and working capital constraints, which constraints may require the Reorganized Debtor to seek additional working capital. The Reorganized Debtor may not be able to obtain such working capital when it is required. Further, even if the Reorganized Debtor was able to obtain additional working capital, it may only be available on unreasonable terms. For example, the Reorganized Debtor may be required to take on additional debt, the interest costs of which could adversely affect the results of operations and the financial condition of the Reorganized Debtor. Although the Debtor's Financial Projections represent management's view based on current known facts and assumptions about the future operations of the Reorganized Debtor, there is no guarantee that the Financial Projections will be realized.

### 3.    The Debtor's Members Will Control the Reorganized Debtor

To the extent that the Debtor's Equity Security Holders make the Equity Contribution to fund the Debtor's Plan, consummation of the Plan will result in the Debtor's members owning all of the Reorganized Debtor's Equity Interests, thus giving the Debtor's current members a controlling influence over the business and affairs of the Reorganized Debtor, if any.

### C.    RISK FACTORS THAT COULD NEGATIVELY IMPACT THE DEBTOR'S BUSINESS

### 1.    Prolonged Continuation of the Chapter 11 Case is Likely to Harm the Debtor's Asset Values

The prolonged continuation of this Chapter 11 Case is likely to adversely affect the Debtor's property and asset values, so long as the Chapter 11 Case continues. In addition, so long as the Chapter 11 Case continues, the Debtor will be required to incur costs for professional fees and other expenses associated with the proceedings. The prolonged continuation of the Chapter 11 Case may also require the Debtor to seek additional financing in order to service its obligations. It may not be possible for the Debtor to obtain additional financing during the pendency of the Chapter 11 Case on commercially favorable terms or at all. If the Debtor was to require additional financing during the Chapter 11 Case and was unable to obtain the financing on favorable terms or at all, it is unlikely the Debtor could successfully liquidate its assets.

### 2.    Certain Tax Implications of the Debtor's Bankruptcy and Reorganization May Increase the Tax Liability of the Reorganized Debtor

Holders of Allowed Claims should carefully review Section VIII herein, "Certain U.S. Federal Tax Consequences of the Plan," to determine how the tax implications of the Plan and this Chapter 11 Case may adversely affect the Reorganized Debtor.

### D.    RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS

### 1.    The Financial Information Contained Herein is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed

**The financial information contained in this Disclosure Statement has not been audited.** In preparing this Disclosure Statement, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor believes that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

### 2.    Financial Projections and Other Forward Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a result, Actual Results May Vary

4832-0867-9498, v. 1

This Disclosure Statement contains various projections concerning the financial results of the Reorganized Debtor's operations, including the Financial Projections, that are, by their nature, forward looking, and which projections are necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtor may turn out to be different from the financial projections.

Specifically, the projected financial results contained in this Disclosure Statement reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtor, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of Confirmation and Consummation of the Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtor, including, without limitation, the Debtor's ability to maintain or increase revenue and gross margins, control future operating expenses or make necessary capital expenditures; (c) general business and economic conditions; and (d) overall performance and trends in the medical field.

Due to the inherent uncertainties associated with projecting financial results generally, the projections contained in this Disclosure Statement will <u>not</u> be considered assurances or guarantees of the amount of funds or the amount of Claims that may be Allowed in the various Classes. While the Debtor believes that the financial projections contained in this Disclosure Statement are reasonable, there can be no assurance that they will be realized.

### E.    DISCLOSURE STATEMENT DISCLAIMERS

### 1.    The Information Contained Herein Is for Soliciting Votes Only

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

### 2.    This Disclosure Statement Was Not Approved by the Securities and Exchange Commission

This Disclosure Statement has not been filed with the Commission or any state regulatory authority. Neither the Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

### 3.    The Disclosure Statement Contains Forward Looking Statements

This Disclosure Statement contains "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

### 4.    No Legal or Tax Advice is Provided to You by this Disclosure Statement

**This Disclosure Statement is not legal advice to you.** The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

**5.    No Admissions Are Made by this Disclosure Statement**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, Holders of Allowed Claims or Equity Interest or any other parties in interest.

**6.    No Reliance Should be Placed on any Failure to Identify Litigation Claims or Projected Objections**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Debtor or the Reorganized Debtor may seek to investigate, File and prosecute Claims and Equity Interest and may object to Claims after the Confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such Claims or Objections to Claims.

**7.    Nothing Herein Constitutes a Waiver of any Rights to Object to Claims or Recover Transfers and Assets**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor or the Reorganized Debtor (or any party in interest, as the case may be) to object to that Holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Debtor or its Estate are specifically or generally identified herein.

**8.    The Information Used Herein Was Provided to the Debtor and Was Relied Upon by the Debtor's Advisors**

Counsel to the Debtor has relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to the Debtor has performed certain limited due diligence in connection with the preparation of this Disclosure Statement, it has not verified independently the information contained herein.

**9.    The Potential Exists for Inaccuracies, and the Debtor has no Duty to Update**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor, nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

**10.    No Representations Made Outside of the Disclosure Statement Are Authorized**

No representations concerning or relating to the Debtor, the Chapter 11 Case or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to the counsel to the Debtor, and the United States Trustee.

**VI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

**A.    Liquidation Under Chapter 7 of the Bankruptcy Code**

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtor's assets. A discussion of the effect that a chapter 7 liquidation would have on the recovery of holders of Claims is set forth in Section V.C. herein, titled "Statutory Requirements for Confirmation of the Plan." In performing the liquidation analysis, the Debtor has assumed that all Holders of Claims will be determined to have "claims" that are entitled to share in the proceeds from any such liquidation. The Debtor believes that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, (ii) smaller distributions being made to creditors than those provided in the Plan because the Debtor's only real assets consist of the Receivables and the Medical Services, neither of which have any value in a liquidation, (iii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of unexpired leases and executory contracts in connection with the cessation of the Debtor's operations, and (iv) the failure to realize the greater, going-concern value of all of the Debtor's assets.

## B.    Filing of an Alternative Plan of Reorganization

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan of reorganization. Such a plan might involve either a reorganization and continuation of the Debtor's business or an orderly liquidation of their assets. During the negotiations prior to the filing of the Plan, the Debtor explored various alternatives to the Plan.

The Debtor believes that the Plan enables the Debtor to emerge from chapter 11 successfully and expeditiously, preserves its business and allows creditors to realize the highest recoveries under the circumstances. In a liquidation under chapter 11 of the Bankruptcy Code, the assets of the Debtor would be sold in an orderly fashion over a more extended period of time than in a liquidation under chapter 7, and a trustee need not be appointed. Although the administrative costs associated with a chapter 11 liquidation are less than the costs associated with a chapter 7 liquidation, the fact still remains that the Debtor does not own any assets that have any value separate and apart from its business. Thus, although creditors would normally receive greater recoveries in a chapter 11 liquidation than in a chapter 7 liquidation, in the present case, creditors would receive little, if any recoveries in either instance. The Debtor believes that a liquidation under chapter 11 is a much less attractive alternative to creditors than the Plan because the Plan provides for a greater return to creditors.

## VII.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor or the Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.    resolve any issues related to any matters adjudicated in the Chapter 11 Case, including the sale and closing of the Sale Property;

36

5.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided* that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.    enforce Article X.A. and X.B. of the Plan;

12.    resolve any cases, controversies, suits or disputes with respect to the Exculpation and other provisions contained in Article IX of the Plan and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such injunctions and other provisions;

13.    enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.    resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

15.    enter an order concluding the Chapter 11 Case.

**VIII.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

**IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE IRC.  TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DISCLOSURE STATEMENT.  EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

A.    **Certain Federal Income Tax Consequences of the Plan**

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the Plan to Holders of Allowed Claims.  This summary is based on the Internal Revenue Code (the "IRC"), the U.S. Treasury Regulations promulgated thereunder, judicial authorities, published administrative

37

positions of the Internal Revenue Service (the "**IRS**") and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect. No rulings or determinations of the IRS or any other taxing authorities have been sought or obtained with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion is for general information only and does not purport to address all aspects of U.S. federal income taxation that may be relevant to Holders of Claims in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies or regulated investment companies). This discussion only addresses the tax consequences to Holders of Claims who have held such Claims as capital assets within the meaning of the IRC. No aspect of foreign, state, local or estate and gift taxation is addressed.

Importantly, the Debtor anticipates that the Restructuring Transactions will be exempt from taxation pursuant to Section 1146 of the Bankruptcy Code. Accordingly, little or no tax liability will accrue if the Plan is confirmed.

**THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL AND NON-UNITED STATES TAX CONSEQUENCES OF THE PLAN.**

**B.     In General**

The U.S. federal income tax consequences of the distributions contemplated by the Plan to Holders of Claims will depend upon a number of factors. The character and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided thereby will depend upon, among other things, (i) the manner in which a Holder acquired a Claim, (ii) the length of time the Claim has been Held, (iii) whether the Claim was acquired at a discount, (iv) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years, (v) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim (vi) the method of tax accounting of the Holder, and (vii) whether the Claim is an installment obligation for U.S. federal income tax purposes.

For purposes of the following discussion, a "U.S. Holder" is any person (i) who is a citizen resident of the United States; (ii) that is a corporation or partnership created or organized in or under the laws of the United States or any state thereof of the District of Columbia; (iii) that is an estate, the income of which is subject to U.S. federal income taxation regardless of its source; or (iv) that is a trust (a) the administration over which a United States person can exercise primary supervision and all of the substantial decisions of which one or more United States persons have the authority to control or (b) that has elected to continue to be treated as United States person for U.S. federal income tax purposes. A "Non-U.S. Holder" is any person that is not U.S. Holder. In the case of a partnership, the tax treatment of its partners will depend on the status of the partner and the activities of the partnership. Holders who are partnerships or partners in a partnership should consult their tax advisors.

Certain Holders of Claims (such as foreign persons, S corporations, regulated investment companies, insurance companies, financial institutions, small business investment companies, broker-dealers, and tax exempt organizations) may be subject to special rules not addressed in this summary of the U.S. federal tax consequences. There also may be state, local and/or foreign income or other tax considerations or U.S. federal estate and gift tax consideration applicable to Holders of Claims, which are not addressed herein. EACH HOLDER OF A CLAIM OR EQUITY INTEREST AFFECTED BY THE PLAN IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR WITH RESPECT TO DISTRIBUTIONS RECEIVED UNDER THE PLAN.

### C.    U.S. Holders of Claims

A U.S. Holder should generally recognize capital gain or loss for U.S. income tax purposes in an amount equal to the difference between the amount of Cash (and other consideration received) under the Plan in respect of such Holder's Claim and the Holder's adjusted tax basis in the Claim.  However, to the extent a U.S. Holder received any Cash (or other consideration) in satisfaction of any accrued and unpaid interest, such Holder may recognize ordinary income or loss to the extent that such Cash (or other consideration) is allocable to the accrued and unpaid interest, unless such Holder has previously included the accrued interest in such Holder's taxable income.

### D.    Non-U.S. Holders of Claims

A Non-U.S. Holder of a Claim generally will not be subject to the U.S. federal income tax with respect to any income or gain recognized upon the exchange of such Holder's Claim with Cash (or other property) pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain from the exchange is "effective connected" for U.S. federal income tax purposes, or (ii) if such Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.  To the extent any cash (or other consideration) is distributed for accrued and unpaid interest, however, a Non-U.S. Holder may be subject to U.S. withholding taxes at (30%) unless such Holder is qualified for the so-called "portfolio interest exemption" or eligible to claim a reduction or exemption under any applicable treaty and complies with certain required certification procedures.

### E.    Importance of Obtaining Professional Tax Assistance

The U.S. federal income tax consequences to a Holder other than a Holder receiving Cash (or other property) in satisfaction of such Holder's Claim may be different from the tax consequences described above. Holders of each such Claim should consult their tax advisers regarding potential federal income tax consequences.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE U.S., STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

### IX.    Glossary of Defined Terms

For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document will be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed will mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Disclosure Statement in its entirety rather than to a particular portion of the Disclosure Statement; (f) captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

Unless the context otherwise requires, the following terms will have the following meanings when used in capitalized form herein:

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees and Allowed Professional Compensation) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Case, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.  To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.      "*Administrative Claim*" means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code (excluding claims under section 503(b)(9) of the Bankruptcy Code), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.  Administrative Claims do not include DIP Lender Claims, which are separately treated under the Plan.

3.      "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

4.      "*Allowed*" means, with respect to Claims:  (a) any Claim, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; *provided*, *however,* that with respect to any Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor or the Reorganized Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

5.      "*Allowed Professional Compensation*" means all Accrued Professional Compensation allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

6.      "*Avoidance Actions*" means any and all claims and causes of action which the Debtor, the debtor in possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.      "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims (modified, as necessary, based on voting party in accordance with the Disclosure Statement Order) entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

8.      "*Bankruptcy Code*" means Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended and applicable to the Chapter 11 Case.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of title 28 of the United States Code, the United States District Court for the District of Nevada.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

11.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

13.     "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

14.     "*Chapter 11 Case*" means the Chapter 11 case pending for the Debtor under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

15.     "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

16.     "*Claims Bar Date*" means, as applicable, (a) December 14, 2016, (b) the Governmental Bar Date or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

17.     "*Claims Objection Bar Date*" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided, however*, that in no event shall the Claims Objection Bar Date be greater than 120 days after the Effective Date with respect to any General Unsecured Claim in Class 6.

18.     "*Claims Register*" means the official register of Claims maintained by Bankruptcy Court.

19.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article II hereof pursuant to section 1122(a) of the Bankruptcy Code.

20.     "*Commission*" means the U.S. Securities and Exchange Commission.

21.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article VIII of the Plan having been:  (a) satisfied; or (b) waived pursuant to Article VIII of the Plan.

22.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

24.     "*Confirmation Hearing Notice*" means that certain notice of Confirmation Hearing approved by the Disclosure Statement Order.

25.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26.     "*Consummation*" means the occurrence of the Effective Date.

27.     "*Cure Claim*" means a Claim based upon the Debtor's defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

28.     "*Debtor*" means SunPower by Renewable Energy Electric, Inc., in its individual capacity as a debtor in this Chapter 11 Case.

29.     "*Debtor in Possession*" means the Debtor, as debtor in possession in this Chapter 11 Case.

30.     "*Disclosure Statement*" means the *Disclosure Statement for the Plan of Reorganization of SunPower by Renewable Energy Electric, Inc. Under Chapter 11 of the Bankruptcy Code*, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

31.     "*Disclosure Statement Order*" means that certain *Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents,* approved by the Bankruptcy Court on _____, 2017, as the order may be amended from time to time.

32.     "*Disputed Claim*" means, with respect to any Claim, any Claim that is not yet Allowed.

33.     "*Distribution Agent*" means the Debtor, its bankruptcy counsel, or such other distribution agent selected by the Debtor.

34.     "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

35.     "*Effective Date*" means the day that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX of the Plan have been: (i) satisfied; or (ii) waived pursuant to Article IX of the Plan.

36.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

37.     "*Equity Interest*" means any membership interest or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in the Debtor that existed immediately prior to the Effective Date.

38.     "*Estate*" means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

39.     "*Exchange Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

40.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

41.     "*Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

42.     "*File*" or "*Filed*" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

43. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

44. "*Financial Projections*" means the financial projections set forth in the Stipulation.

45. "*General Unsecured Claim*" means (i) Class 6 General Unsecured and (ii) any unsecured Claim against any Debtor that is not a Priority Tax Claim, Administrative Claim or Fee Claim.

46. "*Governmental Bar Date*" means February 8, 2017.

47. "*Holder*" means an Entity holding a Claim or an Equity Interest.

48. "*Impaired*" means any Claims in an Impaired Class.

49. "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

50. "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence.

51. "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring no later than thirty (30) days after the Initial Distribution Date, and for the first eight (8) months thereafter, the first Business Day that is as soon as reasonably practicable occurring no later than thirty (30) days after the immediately preceding Periodic Distribution Date.  After eight (8) months thereafter, the Periodic Distribution Date will occur on the first Business Day that is as soon as reasonably practicable occurring approximately sixty (60) days after the immediately preceding Periodic Distribution Date.

52. "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

53. "*Petition Date*" means August 12, 2016, the date on which the Debtor commenced the Chapter 11 Case

54. "*Plan*" *means the Plan of Reorganization of SunPower by Renewable Energy Electric, Inc. Under Chapter 11 of the Bankruptcy Code* dated February __, 2017, as amended, supplemented or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated therein by reference.

55. "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.

56. "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

57. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

58. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

59. "*Record Date*" means the close of business on February 8, 2017.

60. "*Reorganized Debtor* means the Debtor, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

61. "*Retained Professional*" means any Entity: (a) employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

62. "*Schedules*" mean, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

63. "*Securities Act*" means the United States Securities Act of 1933, as amended.

64. "*Solicitation Deadline*" means the close of business on _____, 2017.

65. "*Solicitation Package*" means the Disclosure Statement, the Plan, all exhibits thereto, Ballots and the Confirmation Hearing Notice.

66. "*SunPower*" means SunPower Corporation Systems, a Delaware corporation, SunPower North America, LLC, a Delaware limited liability company, and Sunpower Corporation, a Delaware corporation.

67. "*SunPower Stipulation*" means that certain stipulation entered into by and between the Debtor and SunPower Corporation Systems, a Delaware corporation, SunPower North America, LLC, a Delaware limited liability company, and Sunpower Corporation, a Delaware corporation, at Docket No. 203, a copy of which is attached hereto as **Exhibit D**.

68. "*Tort Claim*" means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to protection of human health, safety or the environment.

69. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

70. "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

71. "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

72. "*Voting Classes*" means Classes 1, 2, 3, 4, 5, 6, 7 and 86.

73. "*Voting Deadline*" means _____, 2017 at 5:00 p.m. prevailing Pacific Time for all Holders of Claims, which is the date and time by which all Ballots must be received by Schwartz Flansburg PLLC., in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

## X.    RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to the Debtor's creditors than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code.  In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than that which is proposed under the Plan.  Accordingly, the Debtor recommends that Holders of Claims entitled to vote on the Plan support Confirmation of the Plan and vote to accept the Plan.

Respectfully submitted,

SunPower by Renewable Energy Electric, Inc.

By: /s/ Jason Vita
    Its President


/s/Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Attorneys for the Debtor

45

**EXHIBITS**

**Exhibit A –** Copy of Proposed Plan of Reorganization

**Exhibit B** – Budget/Financial Projections

**Exhibit C** – Liquidation Analysis

**Exhibit D** – SunPower Stipulation