Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 16-14459-GS |
| Sunpower by Renewable Energy Electric, Inc., | Chapter 11 |
| | Confirmation Hearing Date: August 17, 2017 |
| Debtor. | Confirmation Hearing Time: 9:30 am |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF**
**CONFIRMATION OF ITS CHAPTER 11 PLAN OF REORGANIZATION**
<u>**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**</u>

Sunpower by Renewable Energy Electric, Inc, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its counsel, Schwartz Flansburg PLLC, hereby files its Memorandum of Law In Support of Confirmation of its Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as may be modified or amended, the "**Plan**")[1], and in support thereof, states the following:

True to the most fundamental bankruptcy principles, this chapter 11 case was commenced with the goal of maximizing estate value for the benefit of all parties-in-interest. As set forth herein, the Plan will satisfy the Debtor's obligations to its creditors in a fair and equitable manner, will satisfy all applicable provisions of the Bankruptcy Code, and should be

---

[1] Capitalized terms not defined herein shall have those meanings ascribed to them in the Plan.

1

confirmed. Accordingly, the Debtor respectfully requests that the Court enter an order confirming the Plan.

## FACTS

The pertinent facts are set forth in (i) the Second Amended Disclosure Statement (the "**Disclosure Statement**"), (ii) the Plan, (iii) the declarations in support of confirmation of the Plan that will be filed with the Court prior to the confirmation hearing, and (iv) the testimony and other evidence, if necessary, that will be presented at the confirmation hearing. Such facts are incorporated here as if fully set forth herein. Salient facts will be referred to in connection with the discussion of applicable legal principles.

## ARGUMENT

**A.    THE PLAN SATISFIES THE CONDITIONS TO CONFIRMATION ENUMERATED BY SECTION 1129 OF THE BANKRUPTCY CODE**

To obtain confirmation of the Plan, the Debtor must demonstrate that the Plan satisfies the provisions of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence. See In re Monarch Beach Venture, Ltd., 166 B.R. 428, 432 (Bankr. S.D.Cal. 1993), quoting Heartland Fed. Say. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1165 (5th Cir. 1993) (holding that "preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown") (citation omitted); 7 Collier on Bankruptcy ¶ 1129.02[4], at 1129-22 (15th ed. 1997) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied."). The Debtor will demonstrate that all the subsections of section 1129 of the Bankruptcy Code are satisfied (or soon will be) with respect to the Plan by a preponderance of the evidence at the Confirmation Hearing.

1. **Section 1129(a)(1) is Satisfied Because the Plan Complies with all Applicable Provisions of the Bankruptcy Code**

Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), and decisions in that regard concur. See In re Cardsystems Solutions, Inc., 2007 WL 4166184, *8 – 9 (Bankr. Ariz. 2007); see also In re Johns-Manville Corp., 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom; Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988); In re Toy & Sports Warehouse Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). As demonstrated below, the Plan complies with the requirements of both sections 1122 and 1123.

   **(a)    The Plan Complies With Section 1122 of the Bankruptcy Code**

Section 1122(a) of the Bankruptcy Code authorizes multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class. 11 U.S.C. § 1122. Under Section 1122(a), the relevant inquiry is whether all claims of a class have substantially similar legal rights with respect to the debtor's assets. A plan proponent is afforded significant flexibility in classifying claims under section 1122(a) if there is a reasonable basis for the classification and if all claims within a particular class are substantially similar. See In re Elmwood, Inc., 182 B.R. 845, 849 (D. Nev. 1995), citing In re Montclair Retail Center, 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995); see also In re Jersey City Medical Center, 817 F.2d 1055 (3d Cir. 1987); In re U.S. Truck Co., Inc., 800 F.2d 581, 586 (6th Cir. 1986); In re LeBlanc, 622 F.2d 872, 879 (5th Cir.), reh'g denied, 627 F.2d 239 (5th Cir. 1980).

3

Other than Administrative Claims and Priority Claims, which are not classified and are separately treated, Claims as defined in the Plan are divided into 9 Classes. Classes 1 through 8 are comprised of the Debtor's secured and unsecured claims, each of which is impaired and entitled to vote on the Plan.

Last, Class 9 is comprised of the claims of the Debtor's equity interest holders, which are impaired under the Plan.

The classification scheme of the Plan is based upon differences in the legal nature and/or priority of the claims against the Debtor's estate. Moreover, each of the Claims in each particular class is substantially similar to the other Claims in such class. Accordingly, and as set forth in detail below, the classification of Claims in the Plan complies with section 1122 of the Bankruptcy Code.

For example, Ninth Circuit Court of Appeals case law and *Collier on Bankruptcy* state that where separate creditors hold claims secured by a different note and deed of trust, such creditors are generally entitled to separate classification. In re Commercial Western Finance Corp., 761 F.2d 1329, 1338 (9th Cir. 1985), citing 5 Collier on Bankruptcy ¶ 1122.03[6] at 1122-12 (15th ed. 1984); Mokava Corp. v. Dolan, 147 F.2d 340 (2nd Cir. 1945); In re Palisades-On-The-Desplaines, 89 F.2d 214 (7th Cir. 1937); In re Sullivan, 26 B.R. 677 (Bankr. W.D.N.Y. 1982). The Ninth Circuit went on to state that the only exception to this rule is where "the different properties are in the same location, purchased at approximately the same time, and thus worth roughly the same amount." Id., citing Palisades-On-The-Deplaines, 89 F.2d at 217-18.

Moreover, the Seventh Circuit Court of Appeals upheld a debtor's decision to separately classify the claims of creditors with rights under section 1111(b) of the Bankruptcy Code.

4

Matter of Woodbrook Associates, 19 F.3d 312 (7th Cir. 1994). Specifically, the Seventh Circuit stated:

> Significant disparities do exist between the legal rights of the holder of a § 1111(b) claim and the holder of a general unsecured claim which render the two claims not substantially similar and which preclude the two from being classified together under § 1122(a). Thus, we cannot accept the proposition implicit in Greystone, that separate classification of a § 1111(b) claim is nearly conclusive evidence of a debtor's intent to gerrymander an affirmative vote for confirmation. These disparities in rights stem from the most obvious difference between the two claims: a general unsecured claim exists in all chapters of the Code, while a § 1111(b) claim exists only as long as the case remains in Chapter 11 and, once converted to a Chapter 7 case, recovery is limited to its collateral.

Id. at 318-19. Thus, the Debtor's classification scheme here does not patently violate the Bankruptcy Code.

**(b)    The Plan Complies With Section 1123(a) of the Bankruptcy Code**

Section 1123(a) of the Bankruptcy Code sets forth eight requirements with which every chapter 11 plan must comply. 11 U.S.C. § 1123(a). As described below, the Plan complies fully with each such requirement applicable to these cases:

· Article III of the Plan designates the classification of Claims into classes which contain only Claims that are substantially similar to each other as required by section 1123(a)(1);

· Article II of the Plan designates (but does not classify) Claims of the type described in sections 507(a)(1) (administrative expense claims) and 507(a)(8) (priority tax claims). Because these chapter 11 cases were commenced voluntarily, there are no claims of the kind specified in section 507(a)(2) (claims arising during the "gap" period in an involuntary case);

· Article III of the Plan identifies whether each Class of Claims is impaired or not impaired under the Plan as required by section 1123(a)(2);

· Article III of the Plan sets forth the treatment of each of the impaired Claims as required by Section 1123(a)(3);

· Article III of the Plan provides that, unless the holder of a particular claim has agreed to a less favorable treatment, the treatment of each Claim in each particular Class is the same as the treatment of each other Claim in such Class as required by section 1123(a)(4);

· Article V of the Plan sets forth the means for implementation of the Plan as required by section 1123(a)(5); and

5

· Article III of the Plan also sets forth the amount the Debtor shall pay to their creditors under the Plan, if necessary, for execution of the Plan.

**(c)        The Plan Complies With Section 1123(b) of the Bankruptcy Code**

Section 1123(b) sets forth the permissive provisions that may be incorporated into a chapter 11 plan. In accordance with section 1123(b), the Plan and the transactions contemplated therein represent an effort to compromise between and among the Debtor and each of its primary creditor constituencies. Such a compromise is explicitly contemplated by section 1123(b)(3)(A) of the Bankruptcy Code which states that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3). The standards for approval of settlements are well established and require a court to inquire into the reasonableness of the proposed settlement. See, e.g., In re Washignton Public Power Supply System Securities Litigation, 720 F.Supp. 1379, 1387 (D. Ariz. 1989); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 reh'g denied, 391 U.S. 909 (1968); In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983); Florida Trailer & Equip. Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry is whether the settlement falls below "the lowest point in the range of reasonableness." In re Milden, 111 F.3d 138, *3 (9th Cir. 1997), quoting In re Hydronic Enterprise, Inc., 58 B.R. 363, 366 (Bankr. D. R.I. 1986); see also In re Teltronics Servs., Inc., 762 F.2d 185, 189 (2d Cir. 1985); In re W.T. Grant Co., 699 F.2d at 608. It is the Debtor's belief that the compromises made to gain the approval of its creditors in this case are well above the lowest point in the range of reasonableness and should be approved by the Court.

Similarly, the Debtor's assumption and rejection of executory contracts under the Plan is authorized by, and appropriate under section 1123(b)(2). Section 1123(b)(2) provides that a plan

6

may "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Pursuant to section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if: (i) outstanding defaults on the contract or lease have been cured pursuant to section 365(b)(1) of the Bankruptcy Code, and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications.[2] See In re Peaches Records and Tapes, Inc., 51 B.R. 583, 587 (B.A.P. 9th Cir. 1985); see also Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 386 (2d Cir. 1997); Control Data Corp. v. Zelman (In re Minges), 602 F.2d 38, 42 (2d Cir. 1979); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional"); In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).

Further, a debtor in possession may assign an executory contract or unexpired lease, after such contract or lease has been assumed, even if such contract or lease contains a provision prohibiting assignment. 11 U.S.C. § 365(f). See In re David Orgell, Inc., 117 B.R. 574, 575 - 576

---

[2] Section 365 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee –
    (A) cures, or provides adequate assurance that the trustee will promptly cure such default;
    (B) compensates, or provides adequate assurance that the trustee will promptly compensate, or party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
    (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. §§ 365(a), (b)(1).

7

(Bankr. C.D. Cal. 1990); see also In re UL Radio Corp., 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).

Here, the Plan constitutes (i) a motion by the Debtor to assume each of their executory contracts or unexpired leases that were not rejected or that are not being rejected, either pursuant to the Plan or by separate motion (see Plan, Art. VI), and (ii) a motion to reject each executory contract or expired lease not being assumed under the Plan or previously assumed by separate motion. The Debtor reviewed each of its executory contracts and unexpired leases and determined that their assumption, assumption and assignment, or rejection as provided by the Plan is beneficial to the Debtor and its creditors and is supported by valid business justifications. Accordingly, the Debtor submits that the proposed assumption, assignment, and rejection of executory contracts and unexpired leases under the Plan satisfies the requirement of section 365 of the Bankruptcy Code. Further, the Plan provides that all timely filed claims for amounts owed pursuant to section 365(b)(1) of the Bankruptcy Code as a consequence of a Debtor's assumption or assignment of an executory contract or unexpired lease ("**Cure Payment**") shall be treated as Administrative Claims and also provides an appropriate mechanism for the filing, resolution, and treatment of claims for rejection damages. See Plan Art. VI.

Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code and, thus, satisfies the requirements of section 1129(a) (1) of the Bankruptcy Code.

**2.      Section 1129(a)(2) is Satisfied Because the Debtor Complied With all Applicable Provisions of the Bankruptcy Code**

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the

8

disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978)(''Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); see also In re Sierra-Cal, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997); In re Resorts Int'l, Inc., 145 B.R. 412, 468 (Bankr. D.N.J. 1990); In re Elsinore Shore Assocs., 91 B.R. 238, 258 (Bankr. B.R. D.N.J. 1988); In re River Village Assocs., 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995); In re Johns-Manville Corp., 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom; Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988); In re Toy & Sports Warehouse, Inc., 37 B.R. at 149.

The Debtor complied with the applicable provisions of title 11, including the provisions of sections 1125 and 1126, regarding disclosure and plan solicitation. By order, dated June 26, 2017 (the "**Approval and Procedures Order**"), the Bankruptcy Court approved the Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors and equity interest holders to make an informed judgment whether to accept or reject the Plan.

**(a) The Plan was Properly Solicited In Accordance with the Approval and Procedures Order**

Separately, each holder of a Claim received the solicitation materials required by the Approval and Procedures Order, including, for holders of Claims entitled to vote, the Disclosure Statement (which includes as an exhibit a copy of the Plan), and the necessary ballot(s). The Solicitation Package was transmitted in connection with the solicitation of votes to accept the Plan in compliance with section 1125 of the Bankruptcy Code. 11 U.S.C. §§ 1125(b), 1125(c).

9

4852-6465-4925, v. 1

The Debtor did not solicit acceptance of the Plan by any creditor or equity interest holder prior to the transmission of the Disclosure Statement. See In re California Fidelity, Inc., 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996); In re Trans Max Technologies, Inc., 349 B.R. 80, 86 (Bankr. D. Nev. 2006); see also Trans World Airlines, Inc. v. Texaco Inc. ("In re Texaco Inc."), 81 B.R. 813, 816 (Bankr. S.D.N.Y. 1988) ("Section 1125(b) relates to the voting process with respect to filed plans.").

Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of the Plan. Under section 1126, only holders of allowed Claims in impaired Classes of Claims that will receive or retain property under the Plan on account of such Claims may vote to accept or reject the Plan. As set forth in the Disclosure Statement, in accordance with section 1126 of the Bankruptcy Code, the Debtor solicited acceptances of the Plan from the holders of all allowed claims in each Class of Impaired Claims that is to receive distributions under the Plan.

The impaired Classes entitled to vote under the Plan are Classes 1 through 8. Based upon the foregoing, and the certificates of service filed by the Debtor's counsel, the Debtor complied with the Court's Approval and Procedures Order, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Court Rules of the District of Nevada. The requirements of section 1129(a)(2) are satisfied. See Trans Max Technologies, 349 B.R. 80; see also In re Sound Radio, Inc., 93 B.R. 849, 852-53 (Bankr. D.N.J. 1988), aff'd in part and remanded in part, 103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990).

### 3. Section 1129(a)(3) is Satisfied Because the Plan has been Proposed in Good Faith and not by any Means Forbidden by Law

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." The Ninth Circuit has stated that the good faith standard requires, beyond "[h]onesty and good intentions," that there is "some prospect that the

10

affairs can be reorganized" effectively. In re BBT, 11 B.R. 224, 235 (Bankr. D. Nev. 1981)(citations omitted); see also Glessing v. Koelbl (In re Koelbl), 751 F.2d 137, 139 (2d Cir. 1984)(quoting Manati Sugar Co. v. Mock, 75 F.2d 284, 285 (2d Cir. 1935)); see also Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988).  Generally, a chapter 11 plan is filed in good faith if the plan proponent has exhibited "a fundamental fairness in dealing with [the] creditors" and if the plan "will achieve a result consistent with the objectives and purposes of the Code."  In re Jorgensen, 66 B.R. 104, 109 (Bankr. 9th Cir. 1986) (a chapter 11 plan is filed in good faith if the plan proponent has exhibited "a fundamental fairness in dealing with [the] creditors" and if the plan "will achieve a result consistent with the objectives and purposes of the Code"); see also In re Texaco, Inc., 84 B.R. 893, 907 (Bankr. S.D.N.Y.), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988) (a plan is proposed in good faith "if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the code") (citing Hanson v. First Bank of South Dakota, 828 F.2d 1310, 1315 (8th Cir. 1987), quoting In re Toy & Sports Warehouse, Inc., 37 B.R. at 149); In re Cellular Information Systems, Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994); Connell v. Costal Cable T.V., Inc., 709 F.2d 762, 764 (1st Cir. 1983) ("[A] chapter 11 reorganization plan must be submitted in good faith.  That is to say, there must be some relation – at least an arguable relation – between the chapter 11 plan and the reorganization-related purposes that the chapter was designed to serve").

Congress recognized that the continuation of the operation of a debtor's business as a viable entity benefits the national economy through the preservation of jobs and continued production of goods and services and thus, the primary goal of chapter 11 of the Bankruptcy Code is to promote the restructuring of a troubled entity.  NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984) ("[The] fundamental purpose of reorganization is to prevent a debtor from going

11

into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); see also In re Nite Lite Inns, 17 B.R. 367, 370 (Bankr. Cal. 1982).

Here, the Debtor's chapter 11 case was prosecuted, and the Plan was proposed, with these goals in mind. Pursuant to the Plan, with the equity contribution in the amount of $50,000 (the "**Equity Contribution**") from the Mr. Jason M. Vita ("**Mr. Vita)**, the Debtor's President, the Plan enables holders of allowed claims to realize the highest possible recoveries under the circumstances of the Debtor's Chapter 11 case

### 4. Section 1129(a)(4) is Satisfied Because the Plan Provides for Court Approval of Payments Made by the Debtor for Services or Costs and Expenses

Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the Court. See In re First Mangus Financial Corp., 2008 WL 450447, *4 (Bankr. D. Ariz.); see also In re Johns-Manville Corp., 68 B.R. at 632; 7 Collier on Bankruptcy ¶ 1129.03[4], at 1129-38 (15th ed. 1999). In the instant case, no payment for services or costs in connection with the chapter 11 cases or the Plan has been made by any party other than payments that have been authorized by order of the Court. Thus, the Plan complies with the requirement of section 1129(a)(4) of the Bankruptcy Code.

### 5. Sections 1129(a)(5), (a)(6), (a)(13), (a)(14) and (a)(15) are Satisfied Because they are Generally Not Applicable In This Case

Section 1129(a)(5) of the Bankruptcy Code requires that (i) the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, (ii)

12

4852-6465-4925, v. 1

the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and (iii) there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized Debtor. 11 U.S.C. § 1129(a)(5).

Here, the Debtor is owned and controlled by Jason M. Vita.

The ownership matter is not a subject of controversy in this case.  As set forth in the Disclosure Statement and Plan, however, the Mr. Vita is making an Equity Contribution. Accordingly, the Debtor plans to continue to operate its business in the solar industry and serve the needs of its customers in Nevada, Arizona, and California.

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its businesses approve any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6).

Section 1129(a)(13) requires that the debtor continue retiree benefits, for which the Debtor has none.  11 U.S.C. § 1129(a)(13).

Section 1129(a)(14) requires that the debtor continue domestic support obligations, for which the Debtor also has none.  11 U.S.C. § 1129(a)(14).

Section 1129(a)(15) only applies to individual debtors, and does not apply in this case.

Accordingly, the Debtor (i) does not charge any rates needing approval of a regulatory commission, (ii) has no retiree benefits, (iii) owes no domestic support obligations and (iv) is not an individual.  Therefore, Sections 1129(a)(5), (a)(6), (a)(13), (a)(14) and (a)(15) are satisfied here.

4852-6465-4925, v. 1

**6.    Section 1129(a)(7) is Satisfied Because the Plan is in the Best Interests of all of the Debtor's Creditors**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and stockholders. Specifically, section 1129(a)(7) provides in pertinent part:

With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1129(a)(7).

As section 1129(a)(7) makes clear, the best interests test applies only to non-accepting holders of impaired claims or equity interests. The best interests test focuses on individual dissenting parties rather than classes. See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 No. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999). The test requires the plan proponent to demonstrate that, within each class, any dissenting claim holder or interest holder would receive under the chapter 11 plan not less than the amount such holder would receive in a chapter 7 liquidation. Id. See also In re M. Long Arabians, 103 B.R. 211, 216 – 217 (B.A.P. 9th Cir. 1989); United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 228 (1996); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); In re Northeast Dairy Coop. Fed'n Inc., 73 B.R. 239, 253 (Bankr. N.D.N.Y. 1987).

In the instant case, the best interests test is satisfied as to each impaired Claim. As described in the Liquidation Analysis, attached as Exhibit B to the Disclosure Statement, a chapter 7 liquidation of the Debtor's estate may result in zero distribution to all creditors except for the Debtor's first lien holders on its commercial property. Under the Plan, however,

4852-6465-4925, v. 1

administrative claims and priority claims will receive distributions. Accordingly, confirmation of the Plan will provide each rejecting creditor with a recovery that is not less than such holder would receive in a chapter 7 liquidation.

**7.     Section 1129(a)(8) is Satisfied because Classes 1,2, 7 and 8 Accepted the Plan and the Plan Satisfies the Requirements of Section 1129(b)**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accepts the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Classes 1, 2, 7 and 8 are impaired classes that accepted the Plan. As not all classes accepted the Plan, however, Section 1129(a)(8) has not been satisfied.

Notwithstanding the above, pursuant to 1129(b), the Plan may still be confirmed because section 1129(a)(8) is the only element not satisfied. 11 U.S.C. § 1129(b). More specifically, section 1129(b) provides in pertinent part that:

> [n]otwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable requirements of [section 1129(a)] other than [section 1129(a)(8)] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph *if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan*.

11 U.S.C. § 1129(b)(1) (emphasis added).

Thus, under section 1129(b), the Court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or equity interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the dissenting class or classes. The plan proponent bears the burden of proof by a preponderance of the evidence. In re Melcher, 329 B.R. 865, 873 (Bankr. N.D. Cal. 2005); see also Heartland Fed. Sav. & Loan Ass. Enters v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1163-64 (5th Cir. 1993).

15

**(a) The Plan Does Not Unfairly Discriminate**

Section 1129(b)(1) does not prohibit discrimination among classes. It prohibits only discrimination that is "unfair." In re Corcoran Hosp. Dist., 233 B.R. 449, 455 (Bankr. E.D. Cal. 1999); see also In re 11, 111, Inc., 117 B.R. 471, 478 (Bankr. D. Minn. 1990). The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if classes comprising similarly situated claims or interests receive treatment under the plan that is not equivalent and there is no reasonable basis for the disparate treatment. See In re Tucson Self-Storage, Inc., 166 B.R. 892, (B.A.P. 9th Cir. 1994); In re Kennedy, 158 B.R. 589, 599 (Bankr. D.N.J. 1993); In re Resorts Int'l, Inc., 145 B.R. at 481; In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); In re Future Energy Corp., 83 B.R. 470, 493 (Bankr. S.D. Ohio 1988); In re Johns-Manville Corp., 68 B.R. at 636. Accordingly, as between two classes of claims, there is no unfair discrimination if the classes are comprised of dissimilar claims or interests. See, e.g., In re Eitemiller, 149 B.R. 626, 630 (Bankr. D. Idaho 1993); In re Gallipo, 282 B.R. 917, 920 (Bankr. E.D. Wash. 2002). In re Johns-Manville Corp., 68 B.R. at 636.

In the instant case, because each Class of Claims is of a different legal nature and priority, there is no unfair discrimination between such Classes.

**(b) The Plan is Fair and Equitable**

Pursuant to section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" with respect to a rejecting class of unsecured claims or a class of interests if no claim or interest that is junior to such rejecting class will receive or retain any property under the plan on account of such junior claim or interest. See 11 U.S.C. §§ 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii). Here, the Plan is fair and equitable. Holders of the more senior Claims are not being paid more under the

16

Plan than their allowed claims, and the Plan does not violate the absolute priority rule. Accordingly, the requirements of section 1129(b)(2)(B) are satisfied and the Plan can be confirmed notwithstanding the failure to satisfy Section 1129(a)(8).

### 8. Section 1129(a)(9) is Satisfied Because the Plan Provides for Payment in Full of all Allowed Administrative And Priority Claims

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) receive specified cash payments under the plan unless the holder of such a claim agrees to a different treatment. 11 U.S.C. § 1129(a)(9). Pursuant to Article V of the Plan, and in accordance with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, the Plan provides that each holder of an Allowed Administrative Claim will be paid in cash either on the confirmation date, in the ordinary course of business, or as may be otherwise agreed. Pursuant to Article II of the Plan, and in accordance with section 1129(a)(9)(B), the Plan provides that all of the legal, equitable, and contractual rights of each holder of an allowed administrative claim and an allowed tax claim shall be paid. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

### 9. Section 1129(a)(10) May Be Satisfied Because The Debtor Believes At Least one Class of Impaired Claims will Accept the Plan

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one Class of impaired claims, "determined without including any acceptance of the plan by any insider." The Plan satisfies this requirement in that at least one Class of impaired claims will have accepted the Plan prior to confirmation (Classes 1, 2, 7 and 8) without including the acceptance of the Plan by insiders.

17

4852-6465-4925, v. 1

### 10. Section 1129(a)(11) is Satisfied Because the Plan is not Likely to be Followed by Liquidation or the Need for Further Financial Reorganization

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. See United States v. Energy Resources Co., 495 U.S. 545, 549 (1990); In re Sagewood Manor Associates Ltd. Partnership, 223 B.R. 756, 762 (Bankr. D. Nev. 1998); Internal Revenue Serv. v. Kaplan, 104 F.3d 589, 597 (3d Cir. 1997). The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed. See Trans Max Technologies, 349 B.R. at 95; see also In re Clarkson, 767 F.2d 417,420 (8th Cir. 1985) ("The test is whether the things which are to be done after confirmation can be done as a practical matter. . . .") (citation omitted). The purpose of the feasibility test is to protect against visionary or speculative plans, "which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." Pizza of Haw., Inc. v. Shakey's, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985), citing 5 Collier on Bankruptcy ¶ 1129.02, at 1129-36.11 (15th ed. 1984). For purposes of determining whether the Plan satisfies the feasibility standard, the Debtor analyzed its ability to fulfill its obligations under the Plan. As set forth in the declaration of Jason Vita in support of the Plan, the Debtor's Plan is feasible, and thus, satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

### 11. Section 1129(a)(12) is Satisfied Because the Plan Provides for the Payment of all Statutory Fees

Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [of title 28, United States Code], as determined by the court at the hearing on confirmation of the

18

4852-6465-4925, v. 1

plan." 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(1). In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that all such fees and charges payable will be paid pursuant to the Plan. After confirmation and until this case is closed, converted, or dismissed, the Plan provides for the payment by the Disbursement Agent of all such fees as they become due and payable. See Plan, Art. VII. Thus, the Plan satisfies the requirements of section 1129(a)(12).

## THE COURT SHOULD APPROVE THE PLAN

Pursuant to section 105(a) of the Bankruptcy Code, the Bankruptcy Court is empowered with general equity powers to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Further, section 1123(b) of the Bankruptcy Code states that a plan of reorganization may include any "appropriate provision not inconsistent with the applicable provisions of this title." The Debtor's Plan does not request any extraordinary relief and as such, the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed by the Court as in the best interests of the Debtor, its estate and its creditors.

## CONCLUSION

The Plan complies with and satisfies all of the requirements of section 1129 of the Bankruptcy Code and, thus, should be confirmed. Accordingly, the Debtor requests that the Court confirm the Plan pursuant to section 1129(b).

///

///

19

4852-6465-4925, v. 1

Dated this 11th day of August, 2017.

Respectfully Submitted,

/s/Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

4852-6465-4925, v. 1